CHATTANOOGA CORPORATION,
Plaintiff-Appellant,

v.

Dale H. KLINGLER, Harlen B. Jensen, Thomas H. Church, Richard Wilkins, Lewis C. Duncan, M.D., and James W. Sauder, Defendants-Appellees.

No. 82–5017.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 10, 1983.
Decided April 12, 1983.

Charles B. Park, III, Bell, Seltzer, Park & Gibson, Ronald T. Lindsay, Charlotte, N.C. (argued), John B. Phillips, Jr. [L. COUNSEL], Hoyt O. Samples (argued), Stophel, Caldwell & Heggie, Chattanooga, Tenn., for plaintiff-appellant.

Geoffrey G. Young, Hugh J. Moore, Jr., Witt, Gaither & Whitaker, Chattanooga, Tenn., V. Frank Asaro (argued), Asaro & Associates, San Diego, Cal., for defendants-appellees.

Before CONTIE and WELLFORD, Circuit Judges, and MILES,* District Judge.

WELLFORD, Circuit Judge.

Chattanooga Corporation (Chattanooga), appellant, filed an action against six individuals, alleged to be residents of Idaho, Nevada, and California, in the United States District Court at Chattanooga, Tennessee, 528 F.Supp. 372, seeking a declaratory judgment and other equitable relief. Subject matter jurisdiction was not disputed in this dispute arising out of a contractual relationship between appellant Chattanooga and the former principals in Vari-Temp Manufacturing Corporation (Vari-Temp), a California corporation located in San Diego, which dissolved by agreement in 1977. Before Chattanooga contacted Vari-Temp about acquiring its assets including certain patents, Vari-Temp did not do business in Tennessee. Klingler, former President of Vari-Temp, who owned a controlling interest, conducted the negotiations for the proposed sale to Chattanooga prior to the dissolution of the California company and distribution of its assets to the six appellee shareholders. Appellee Sauder, a Nevada resident, was the only other among the shareholders active in Vari-Temp operations, which involved making cold therapy apparatus.

The sale price for the assets, including the patents which are the subject matter of this dispute, was $540,000. None of the assets prior to the sale were located in Tennessee. Negotiations which preceded the sale and transfer of the assets and patents took place in various places, finally concluding in San Diego. Klingler came to Tennessee during the course of these discussions, and there were numerous communications between him and appellant Chattanooga by mail and by phone.

During 1980 appellant sued each of the non-resident appellees "for a declaratory judgment of noninfringement and nonapplicability of the claims" of certain of the patents that had been owned by Vari-Temp and sold to it nearly three years before. It was asserted by Chattanooga that its claims "arise out of business transactions conducted in the State of Tennessee . . . and operations set in motion by defendants (appellees) have a realistic impact on the commerce of the State of Tennessee . . . contemplated by the defendants (appellees) . . . ." Chattanooga had paid royalties on the patents involved on products covered thereby from the time of sale. Chattanooga claimed that its operations in Tennessee did not involve any infringement on any of the patents and that the sale agreement should be voided and it should be relieved of any further minimum royalty payments.

The underlying agreement was to be governed by the laws of California and provided for arbitration of any controversy related to the agreement terms.

During a brief transition period after the 1977 sale, Klingler and Sauder were employed by Chattanooga; Klingler twice travelled to Tennessee pursuant to this employment, but Sauder never did.[1] Service was had on all defendants under the Tennessee Long Arm Statute pursuant to Federal Rule of Civil Procedure 4. Jurisdiction

---

* The Honorable Wendell A. Miles, Chief Judge, Western District of Michigan, sitting by designation.

1. The other four shareholder defendant-appellees were described by the court below as "passive investors" only.

was claimed by reason of a claimed federal question, having to do with the patents sold and assigned to Chattanooga, and also by virtue of diversity of citizenship.

The district judge considered the question of in personam jurisdiction raised by appellees on their motion to dismiss, or in the alternative to change venue. Appellees initiated arbitration proceedings on the issues raised in California and appellant sought to stay the California arbitration proceedings. The district judge ruled that the four nonactive shareholders, who had an employment relationship with neither Vari-Temp nor Chattanooga, "did not purposefully avail themselves of the privilege of carrying on activities in Tennessee." He concluded, to the contrary, that "the nature of Klingler's actions make it appropriate for the court to assume jurisdiction over him."[2] Klingler, he concluded, was "acting largely in his own interests" in negotiating the deal with Chattanooga and in coming to Tennessee pursuant thereto.

Finally, the Court decided that "Sauder lacked the personal involvement in the negotiations ... and the control over Vari-Temp," and thus found no personal jurisdiction over him. He concluded that Chattanooga's basic interest was to defeat appellee's claims for royalties due under the contract," not in averting harm to its business from a patent infringement suit," nor in giving public access to inventions purportedly covered by the patents in dispute. He ruled, therefore, that the cause of action in reality arose by contract, not by way of patent infringement, and that California was the proper forum, but dismissed the action because to do otherwise would preempt the parties' arbitration agreement.[3]

Chattanooga relied principally upon *Lear, Inc. v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969) in bringing the action to repudiate the agreement because of alleged failure of consideration due to the asserted invalidity of the patents acquired from Vari-Temp shareholders. On appeal, it claims that assertion of personal jurisdiction over all defendants is not only constitutionally appropriate but in accordance with "traditional notions of fair play." It further contends that the district court abused its discretion in not entertaining a declaratory judgment against Klingler, who is found to be subject to personal jurisdiction in Tennessee, where Chattanooga did business.

As determined by the district judge, the first and principal inquiry to be made in this case is whether the California, Nevada and Idaho residents (appellees) had or had not, under the circumstances, purposefully availed themselves of the privileges of the forum state, Tennessee. A frequently cited decision of this court discussed this problem and that of determining in personam jurisdiction over non-residents in an appeal arising from the same district court and the same district judge some fifteen years ago, *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374 (6th Cir.1968). As was stated in that decision

> The nature and quality of a person's contact with a state that will serve as the basis for the exercise of *in personam* jurisdiction over that person by the state is not a subject of easy description.

*Southern Machine,* p. 380.

Prior to this court's decision in *Mohasco,* the Supreme Court had established in *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), that in personam jurisdiction over a person not present in the state might be established through "minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158. Doing acts in the state

---

**2.** The Judge also found that "Klingler indicated that he attached more significance to the negotiations and contacts with plaintiff (Chattanooga) than the passive investors *who were content to let Klingler act as their agent.*" (Emphasis added).

**3.** The dismissal was due also to a combination of the absence of public policy to resolve any patent validity, to "venue problems," and in this instance, "the appearance of forum shopping."

bringing about a "substantial connection" or even causing a known or expected consequence in the state may satisfy the "minimum contacts" test. *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957), *Southern Machine, supra,* pp. 380, 381. The Supreme Court cautioned in *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), that to find in personam jurisdiction over a non-resident under such circumstances of "minimum contacts" and "substantial connection," there must also be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws," and to comport with minimal due process requirements. *Hanson,* 357 U.S. at 253, 78 S.Ct. at 1239. *Southern Machine, supra,* then set out three criteria for determining proper limits of in personam jurisdiction under the laws of Tennessee which prescribe methods of long arm service of process upon non-residents to the maximum extent permitted by constitutional due process standards. *See* 18 Vanderbilt Law Review 1484 (1965), 33 Tenn.Law Review 371 (1966); *King v. Hailey Chevrolet Co.,* 462 F.2d 63 (6th Cir.1972); *Pickens v. Hess,* 573 F.2d 380 (6th Cir.1978). These standards have been recognized in later decisions by this court dealing with similar problems, such as *Welsh v. Gibbs,* 631 F.2d 436, 439 (6th Cir.1980); *Capital Dredge v. Midwest Dredging Co.,* 573 F.2d 377 (6th Cir.1978); and *First National Bank of Louisville v. Brewer Tire Co.,* 680 F.2d 1123 (6th Cir. 1982). They are to be established by plaintiff-appellant by a preponderance of the evidence, as recognized by the district court:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine,* 401 F.2d at 381.

█ The district judge recognized that the facts as he found them as to appellee Klingler warranted a conclusion that Klingler "purposely availed himself of the privilege of acting" in Tennessee, that his actions caused a consequence in the forum state, that the cause of action arose from his activities in and directly connected with Tennessee, and that the acts and consequences of Klingler's acts had a "substantial enough connection" with Tennessee to make the exercise of in personam jurisdiction "reasonable." Other circumstances, however, impelled the district court to decline jurisdiction even over Klingler. Among the acts and circumstances attributable to Klingler warranting personal jurisdiction in Tennessee were his controlling interest in Vari-Temp, his direction of negotiations, including a physical presence in Tennessee for this purpose, his subsequent employment by appellant and coming to Tennessee to effectuate contractual purposes, and his strong personal interest in benefits derived from appellant in Tennessee as a consequence of the agreement of sale negotiated by him. This court concurs with the conclusion that these circumstances would indicate that all the *Southern Machine* standards have been demonstrated as to personal jurisdiction over Klingler.

█ Appellee Sauder was an inventor who participated actively in the ongoing business of Vari-Temp. He also was employed by Chattanooga as a part of the arrangement whereby assets and patents would be transferred to a company whose place of business was in Tennessee; he was part and parcel of the representations made concerning the validity of the patents in dispute. The district judge was correct in his analysis that consideration of the employment contracts was in order, along with the contract of sale of assets and assignment of patent rights, in deciding whether the standards for in personam jurisdiction as to Sauder had been met. We disagree with the conclusion of the district court

that personal jurisdiction was not established as to Sauder even though his actual employment was confined to California; he was contractually obligated to travel and work outside the San Diego area as required by Chattanooga, and the employment agreement was stated to be entered into in Tennessee and be construed in accordance with its laws. Sauder was clearly an important party in the transactions and he was called upon to commit himself to keeping in confidence plans, materials and secret aspects of Chattanooga's business to which he was exposed during employment.

As to the remaining appellees, Jensen, Church, Wilkins and Duncan, the decision as to personal jurisdiction in Tennessee is more difficult. Even if described as only "passive investors" in Vari-Temp, it is clear that the latter was a small, closely-held corporation, and that Klingler was clearly acting as agent for all of the shareholders in negotiating a substantial sale of corporate assets and assignment of its patents. The district judge recognized that agency relationship, and noted that Klingler travelled to Tennessee and elsewhere, on behalf of himself and all other appellees to work out the sale and dissolution of Vari-Temp and its business properties. This was, therefore, a personal involvement in a transaction with a business concern in Tennessee, which was obligated by contract to continue to make substantial royalty payments to each of the former shareholders. All four of these parties acted through Klingler to establish at least minimal contacts in Tennessee and to cause substantial consequences in Tennessee. We conclude, furthermore, that Chattanooga's cause of action arose from activities of Klingler, as agent for all the closely-held Vari-Temp shareholders, in Tennessee, and that these acts and consequences were substantial enough to make personal jurisdiction over all of them reasonable. They therefore did purposefully avail themselves of the privilege of acting and causing consequences in Tennessee through their own involvement and, primarily, through the agency of Klingler, they made a conscious choice to deal with Chattanooga, located in Tennessee and

producing products there, knowing of potential consequences within Tennessee. *See Nicholstone Book Bindery, Inc. v. Chelsea House Publishers,* 621 S.W.2d 560 (Tenn. 1981); *American Marine & Mach. Co. v. Consumers' Gas Co.,* 379 F.Supp. 82 (M.D. Tenn.1973) *aff'd* 495 F.2d 1373 (6th Cir. 1974). It is not determinative that appellees did not themselves solicit the contract nor personally visit Tennessee. *Nicholstone, supra; Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 494–499 (5th Cir. 1974). They received the benefit of the negotiations and the ensuing contract and its continuing benefits through payments made to them from Tennessee, representing assets sold and transferred to the buyer assignee in Tennessee. Appellant's claim essentially is that there was either misrepresentation as to validity of patents assigned by appellees or inadequacy of consideration offered to appellant in Tennessee for the benefits derived. These claims relate to actions which had an impact and consequence in Tennessee and in which Tennessee has an interest in lending its courts for adjudication of rights. The Tennessee Long Arm Act, furthermore, specifically relates to "any person who acts (in the requisite manner to bring about jurisdiction in that state) *through an agent* or personal representative." (emphasis added). T.C.A. 20–2–214(c).

In sum, we are of the opinion that appellees' conduct, primarily through actions of their agent Klingler, was such that they could "reasonably anticipate being haled into court" in Tennessee. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 501 (1980). Further, we conclude that finding personal jurisdiction here does not offend "traditional notions of fair play and substantial justice," as set out in *World-Wide Volkswagen Corp., supra,* 444 U.S. at 292, 100 S.Ct. at 564, 62 L.Ed.2d at 498.

We place all defendant-appellees, then, in the same posture with respect to in personam jurisdiction as did the district court with respect to Klingler. Some of the reasons

that persuaded that court to decline to exercise its power to render declaratory judgment as to Klingler simply no longer exist in light of our decision that personal jurisdiction exists as to all appellees for the reasons indicated.

Our decision reached here which is contrary to that of the district court, however, should not be misconstrued or be understood to indicate that non-resident shareholders of a dissolved corporation which may have done business in a forum state, or which may have purposefully availed itself of the privilege of acting in the forum state, are subject to long arm service of process and to be personally subject to jurisdiction in a foreign forum by reason of corporate business activities there. The particular facts of this case have presented a close question concerning the reasonableness of jurisdiction in Tennessee.

While our duty in resolving this controversy rests upon a determination of jurisdiction, in remanding the case, the District Court will be called upon to consider appellees' motion to change the venue. It should be remembered that the court's decision to place the burden upon non-residents to defend themselves in Tennessee still requires the trial court's full consideration of all the factors that bear upon the appropriateness of venue in the Eastern District of Tennessee or in another tribunal, and to consider, as well, the effect of the parties' agreement to submit their dispute to arbitration.

Remanded for further proceedings consistent with this opinion.