CORPORATE PARTNERS, L.P. et al., Appellants,

v.

NATIONAL WESTMINSTER BANK PLC et al., Appellees.

[Cite as *Corporate Partners, L.P. v. Natl. Westminster Bank PLC* (1998), 126 Ohio App.3d 516.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 96 C.A. 96.

Decided March 6, 1998.

*Michael A. Gallo* and *Timothy M. Reardon;* *Eric Seiler, Hal Neier* and *Lance J. Gotko,* for appellants.

*Daniel G. Berick;* *Laurence Greenwald, Michele L. Jacobson* and *David A. Sifre,* for appellees.

GENE DONOFRIO, Presiding Judge.

Plaintiffs-appellants, Corporate Partners, L.P., Corporate Offshore Partners, L.P., and the State Board of Administration of Florida, appeal from an order of the Mahoning County Common Pleas Court dismissing their complaint based on the lack of personal jurisdiction or, alternatively, upon the doctrine of forum non conveniens.

Appellant Corporate Partners, L.P. is a Delaware limited partnership with its principal place of business in New York, New York. Appellant Corporate Off-

shore Partners, L.P. is a Bermuda limited partnership with its principal place of business in Bermuda. Both of these parties invest funds provided by public- and private-sector pension plans, insurance companies, and other sources. Appellant State Board of Administration of Florida is a state agency that administers various public-sector pension plans for the state of Florida. For purposes of this appeal, all three of these parties will be referred to collectively as "appellants" or "Corporate Partners."

Defendants-appellees, National Westminster Bank PLC, NatWest Securities, Ltd., and NatWest Securities Corporation U.S.A., are engaged in the business of underwriting securities. They maintain offices in New York, New York, and in other cities.

In December 1990, Phar–Mor, Inc., an Ohio-based corporation, engaged Nat-West to act as its exclusive placement agent in connection with Phar–Mor's offering of hundreds of millions of dollars worth of debt and equity. Pursuant to its duties as placement agent, NatWest met with Phar–Mor executives in Youngstown, Ohio, visited stores and warehouses in Mahoning County, and attended meetings and other events in the Youngstown area. NatWest then prepared a private placement memorandum ("PPM"), which was ultimately distributed to prospective investors.

In June 1991, appellants entered into a stock purchase agreement with Phar–Mor, pursuant to which appellants purchased millions of shares of Phar–Mor common stock, and warrants to purchase more stock, for approximately $200 million. Because appellee NatWest had been engaged by Phar–Mor as its exclusive placement agent, NatWest was paid $3,750,000 by Phar–Mor as a result of appellants' purchase. However, there was evidence presented below that NatWest had no contact with appellants regarding the sale. In addition, there was evidence presented below that the PPM was provided to appellants by Phar–Mor executives, not by NatWest, and that the stock sale to appellants was solicited by Phar–Mor executives, not by NatWest.

In 1992, it was discovered that certain Phar–Mor executives had perpetrated a fraud by overstating income, earnings, and inventory, thereby causing a loss to investors of hundreds of millions of dollars. As a result, appellants lost all of their $200 million investment.

On August 28, 1995, appellants filed a complaint against appellees pursuant to the Ohio Securities Act, R.C. Chapter 1707. The complaint alleged that NatWest had participated in or aided Phar–Mor in a sale of stock that was in violation of the Ohio Securities Act because of false and misleading representations contained in the PPM.

On November 29, 1995, NatWest filed a motion to dismiss due to lack of personal jurisdiction and failure to state a claim upon which relief could be granted.

Upon NatWest's motion, the trial court dismissed the complaint. In its order, the trial court found that:

"1. Phar Mor was based in Ohio.

"2. The plaintiffs are not residents in Ohio.

"3. The defendants NatWest are not residents of Ohio.

"4. The defendants NatWest made trips to Ohio as part of their 'due diligence' in preparing the PPM. They inspected Phar Mor's Corporate headquarters, some of its Ohio stores, and other facilities. They made many phone calls to Ohio and attended meetings relating to the proposed PPM and sale of stock.

"5. While the complaint alleges the PPM contains many false and fraudulent statements, it does not allege the defendant knew of their falsity. It does not allege the defendant assisted Phar Mor in making a document containing such material, and that was done in Ohio.

"6. The stock was not sold in Ohio. Nothing in the complaint alleges where it was sold. The defendant states it was sold in New York and the closing was there.

"7. The defendant received a commission in excess of $3 million even though it had no part in the sale because its contract with Phar Mor named it the exclusive agent for sales.

"8. The contract between the plaintiff and Phar Mor provides it is governed by New York law."

After making these findings, the trial court stated:

"This is not enough to give Ohio jurisdiction under R.C. 2307.382. Even if it is, the doctrine of forum non-conveniens dictates that it should be handled in New York where the sale was made, where all the parties (except 1 plaintiff from Florida) reside, where the witnesses reside (except Giant Eagle and Shapira, from Pennsylvania, reside), and whose law governs the sale.

"Complaint dismissed on grounds of lack of jurisdiction."

Appellants then filed the instant appeal.

Appellants allege two assignments of error. In the first, they argue that the trial court erred in dismissing the complaint for lack of personal jurisdiction.

■ In determining whether an Ohio court has personal jurisdiction over a nonresident defendant, the trial court is obligated to (1) determine whether Ohio's long-arm statute and the applicable Civil Rule confer personal jurisdiction and (2) determine whether granting jurisdiction under the statute and the rule would deprive the defendant of the right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution. See *Goldstein v. Christiansen* (1994), 70 Ohio St.3d 232, 235, 638 N.E.2d 541, 543–544.

Ohio's long-arm statute is found at R.C. 2307.382, which provides in part:

"(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's * * *

"(1) Transacting any business in this state[.]

" * * *

"(C) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him."

Civ.R. 4.3(A)(1) provides in part:

"(A) *When service permitted.* Service of process may be made outside of this state * * * upon a person who * * * is a nonresident of this state * * *. 'Person' includes an individual * * * or a corporation, partnership, association, or any other legal or commercial entity, who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:

"(1) Transacting any business in this state * * *."

■ Together, R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1) authorize a court to exercise personal jurisdiction over a nonresident defendant and provide for service of process to effectuate that jurisdiction when a cause of action arises from the nonresident defendant's transacting any business in this state. The term "transacting any business in this state" has been given a broad interpretation by the Ohio Supreme Court. See *Goldstein v. Christiansen, supra,* 70 Ohio St.3d at 236, 638 N.E.2d at 544. For instance, in *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.* (1990), 53 Ohio St.3d 73, 559 N.E.2d 477, certiorari denied (1991), 499 U.S. 975, 111 S.Ct. 1619, 113 L.Ed.2d 717, the Ohio Supreme Court concluded that the actions of the defendant in negotiating a lease by telephone and mailing the lease to Ohio met the test of "transacting business" under Ohio law, since, under the lease, the defendant had committed itself to making payments to the plaintiff, who was located in Ohio, and because the lease had created ongoing duties and obligations for the life of the contract between the nonresident defendant and the Ohio plaintiff. Thus, even though the lease was

for premises located in Kentucky and even though the defendant was a Georgia corporation with no physical presence in Ohio, the Ohio Supreme Court found that there was personal jurisdiction over the defendant.

In *Goldstein v. Christiansen, supra*, eight limited partners filed a malpractice action in Ohio against Goldstein, the accountant for a number of limited partnerships. Goldstein was a Florida resident, while a large number of the investors in the limited partnerships, on whose behalf the complaint was filed, resided in Ohio. The complaint alleged that Goldstein had committed malpractice by possessing knowledge of the general partners' misconduct and by failing to disclose the same to the limited partners and by preparing misleading financial statements to the limited partners. The trial court overruled Goldstein's motion to dismiss for lack of jurisdiction.

On appeal to the Ohio Supreme Court in a related action in which Goldstein sought a writ of prohibition against the assertion of jurisdiction over him, the Supreme Court found that it was not patent and unambiguous that the trial court lacked personal jurisdiction over Goldstein. The court noted that Goldstein had engaged in a contractual relationship with the limited partnerships, of which half of the general partners resided in Ohio, and had obligated himself to provide financial statements to limited partners, with a plurality residing in Ohio. The court further noted that the alleged dissemination of misleading financial information to Ohio investors as part of Goldstein's alleged participation in the misconduct supported the trial court's finding that Goldstein had transacted business in Ohio.

With regard to the second prong of the jurisdictional analysis, the assertion of jurisdiction over a nonresident defendant does not violate due process if the nonresident possesses certain minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 101–102. The constitutional touchstone here is whether the nonresident defendant purposely established minimum contacts in the forum state such that he or she should reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, 541–542, citing *World–Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490, 500. Jurisdiction is proper where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum. *Burger King Corp. v. Rudzewicz, supra*, at 475, 105 S.Ct. at 2183–2184, 85 L.Ed.2d at 542–543. It is not proper where the contacts are random, fortuitous, or attenuated or where they result from the unilateral activity of a third party. *Id.* A single act occurring within a state will support jurisdiction if it creates a

"substantial connection" with the forum but not if it creates only an "attenuated affiliation" with the forum. *Id.,* 471 U.S. at 475, fn. 18, 105 S.Ct. at 2184, 85 L.Ed.2d at 543.

In *Burger King Corp.,* the United States Supreme Court considered the claim of a Michigan franchisee that he was not subject to suit in Florida for breach of a franchise agreement, since he was not located in Florida and the alleged breach did not occur there. The Supreme Court held that Florida courts had personal jurisdiction over the Michigan franchisee, since the franchisee had not made the contractually required payments in Florida and had continued to use plaintiff Burger King's trademarks and confidential business information, thus causing foreseeable injury to Burger King in Florida. The court further noted that the franchisee knew that he was affiliating himself with an enterprise based primarily in Florida. The court also noted that throughout the contract disputes, the Florida corporation and the Michigan franchisee had carried on a continuous course of direct communications by mail and by telephone.

Appellants in the instant case argue that the trial court erred in finding that there was no personal jurisdiction over NatWest, since a prima facie showing of jurisdiction was made. Appellants argue that, due to NatWest's meetings with Phar–Mor executives in Youngstown and its preparation of the PPM, NatWest had "transacted business" in Ohio as that term is used in Ohio's long-arm statute, R.C. 2307.382. Additionally, appellants argue that their claims arose from NatWest's transaction of business in Ohio because it was given, and it relied upon, the PPM in connection with its decision to invest $200 million in Phar–Mor. Appellants argue that NatWest sent its representatives into Ohio to solicit business from Phar–Mor and that it ultimately collected a $3,750,000 fee from Phar–Mor as the exclusive placement agent for Phar–Mor. Based upon these factors, appellants argue that they satisfied the conditions of R.C. 2307.382 and Civ.R. 4.3(A)(1). They also argue that appellees had established minimum contacts with Ohio such that they would reasonably anticipate being haled into Ohio courts.

In response, appellees argue that the trial court was correct in finding that there was no personal jurisdiction over them. Appellees argue that none of the parties maintains a business presence in Ohio. Appellees argue that there was no allegation that appellees solicited any purchasers of Phar–Mor stock in Ohio. Appellees further argue that they had no contact with appellants in Ohio regarding appellants' investment in Phar–Mor.

Appellees argue that while they are alleged to have conducted due diligence in Ohio and to have prepared the PPM in Ohio, appellants' cause of action does not arise out of these activities, since appellants are essentially seeking the recision of the stock purchase agreement. Appellees argue that the stock purchase agree-

ment was entered into in New York and, by its terms, was governed by New York law. Appellees argue that they were not a party to this agreement and that the trial court thus properly dismissed the complaint based upon lack of jurisdiction.

■ Appellants are correct in their assertion that the trial court erred in dismissing their lawsuit for lack of personal jurisdiction. To invoke personal jurisdiction through Ohio's long-arm statute and Civ.R. 4, it need only be shown that NatWest transacted "any" business in this state and that appellant's cause of action arose from such transaction. NatWest was retained by Phar–Mor as its exclusive placement agent in connection with Phar–Mor's offering of hundreds of millions of dollars worth of debt and equity. Pursuant to its duties as placement agent, NatWest met with Phar–Mor executives in Youngstown, Ohio, visited stores and warehouses in Mahoning County, and attended meetings and other events in the Youngstown area. NatWest then prepared a private placement memorandum, which was ultimately distributed to prospective investors. Nat-West's actions in preparing the PPM clearly qualify as transacting business in this state.

Appellant has sued NatWest pursuant to R.C. 1707.43, which states in part:

"Every sale or contract for sale made in violation of Chapter 1707. of the Revised Code, is voidable at the election of the purchaser. The person making such sale or contract for sale, and every person who has participated in or aided the seller in any way in making such sale or contract for sale, are jointly and severally liable to the purchaser, in an action at law in any court of competent jurisdiction, upon tender to the seller in person or in open court of the securities sold or of the contract made, for the full amount paid by such purchaser and for all taxable court costs, unless the court determines that the violation did not materially affect the protection contemplated by the violated provision."

Appellants allege that PharMor et al. knowingly made false material statements in and omitted material facts from the PPM upon which appellant relied in its purchase of $200 million worth of Phar–Mor common stock, violating R.C. Chapter 1707. Although Phar–Mor was responsible for soliciting and making the sale of its stock to appellant, it is undisputed that NatWest engaged in the preparation of the PPM for Phar–Mor. As R.C. 1707.43 permits a cause of action against "[t]he person making such sale or contract for sale, and *every person who has participated in or aided the seller in any way in making such sale or contract for sale * * **,*" (emphasis added), NatWest may be held liable for its act of preparing the PPM.

Appellants' cause of action clearly arises from NatWest's transaction of business in this state, *i.e.,* preparation of the PPM. Furthermore, NatWest purpose-

ly established minimum contacts with Ohio such that it should have reasonably anticipated being haled into an Ohio court. Thus, the state of Ohio does have personal jurisdiction over NatWest concerning the transactions involved in this case.

Appellants' first assignment of error is found to be with merit.

In their second assignment of error, appellants argue that the trial court abused its discretion in dismissing the lawsuit on the alternative ground of forum non conveniens.

In *Chambers v. Merrell–Dow Pharmaceuticals, Inc.* (1988), 35 Ohio St.3d 123, 519 N.E.2d 370, the court held that the common-law doctrine of forum non conveniens is committed to the sound discretion of the trial court and may be employed pursuant to the inherent powers of the court to achieve the ends of justice and convenience of the parties and witnesses. The court further held that where the trial court has considered all relevant public and private interest factors and where its balancing of these factors is reasonable, the decision of the trial court deserves substantial deference. *Id.* at 127, 519 N.E.2d at 373–374.

The private-interest factors which the trial court must consider include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) the possibility of a view of premises, if a view would be appropriate to the action; (4) and all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id.*

The public interest factors which are to be considered by the trial court include (1) the administrative difficulties and delay to other litigants caused by congested court calendars; (2) the imposition of jury duty upon the citizens of a community which has very little relation to the litigation; (3) a local interest in having localized controversies decided at home; (4) and the appropriateness of litigating a case in a forum familiar with the applicable law. *Id.*

In addition, it must be noted that the plaintiffs' choice of forum should be given great deference, although a foreign plaintiff's choice of forum deserves less deference than a plaintiff that has chosen his or her home forum. *Id.*

"The final aspect of the common law doctrine is the applicable standard of review upon appeal from a *forum non conveniens* dismissal. 'The *forum non conveniens* determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference. * * * '" *Id.*, citing *Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501,

511–512, 67 S.Ct. 839, 844–845, 91 L.Ed. 1055, 1063–1064; *Koster v. Lumbermens Mut. Cas. Co.* (1947), 330 U.S. 518, 531, 67 S.Ct. 828, 835, 91 L.Ed. 1067, 1077–1078; and *Piper Aircraft Co. v. Reyno* (1981), 454 U.S. 235, 237, 102 S.Ct. 252, 256–257, 70 L.Ed.2d 419, 424.

 Based upon the record of the instant case, there is no indication that the trial court took into account all of the foregoing factors. After reviewing the facts relevant to jurisdictional grounds, the trial court concluded:

"This is not enough to give Ohio jurisdiction under R.C. 2307.382. Even if it is, the doctrine of forum non-conveniens dictates that it should be handled in New York where the sale was made, where all the parties (except 1 plaintiff from Florida) reside, where the witnesses reside (except Giant Eagle and Shapira, from Pennsylvania, reside), and whose law governs the sale."

Any alleged inconvenience to NatWest in defending this action in Ohio must be viewed with skepticism in light of NatWest's longstanding and substantial business contacts within northern Ohio, where NatWest has repeatedly sent its representatives. Also, many of the documents relating to the preparation of the PPM are Phar–Mor's, whose headquarters was located in Mahoning County. Public interest also dictates that appellants' cause of action should be heard in this venue. The suit arises from the fraud perpetrated at Phar–Mor, whose headquarters was in Mahoning County. Most importantly, appellants' cause of action is brought under R.C. 1707.43, the adjudication of which requires the interpretation and application of Ohio law, which can best be done before an Ohio court.

Furthermore, even a foreign plaintiff's choice of forum is given deference. See *Chambers, supra,* 35 Ohio St.3d at 127, 519 N.E.2d at 373–374. Thus, we conclude that the trial court abused its discretion by finding that the doctrine of forum non conveniens dictated that the matter should be handled in New York.

Appellants' second assignment of error is with merit.

The judgment is reversed, and the cause is remanded for further proceedings in accordance with law and consistent with this opinion.

*Judgment reversed
and cause remanded.*

VUKOVICH and WAITE, JJ., concur.