Morton WALKER, D.P.M. dba
Freelance Communications,
Plaintiff,

v.

Robert CONCOBY, et al., Defendants.

No. 5:99 CV 0838.

United States District Court,
N.D. Ohio,
Eastern Division.

Oct. 12, 1999.

---

Gregory D. Seeley, Matthew Kenyon Seeley, Seeley, Savidge & Ebert, Cleveland, OH, for Morton Walker, plaintiff.

Peter Turner, Conway, Marken, Wyner, Kurant & Kern, Cleveland, OH, for East Park Research, Inc., Les Nachman and Gordon Melcher, defendants.

Mark J. Skakun, III, John B. Schomer, Walter A. Lucas, Buckingham, Doolittle & Burroughs, Akron, OH, for David Andrew Nicol, defendant.

## ORDER

DOWD, District Judge.

This matter is before the Court on Defendants Leslie Nachman and Gordon Melcher's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Doc. No. 4), Plaintiff's Opposition (Doc. No. 10), and Defendants' Reply (Doc. No. 14).

For reasons set forth below, the motion is DENIED.

## I.

Defendants Leslie Nachman and Gordon Melcher move to dismiss themselves from this suit on the grounds that the Complaint fails to state a proper ground for personal jurisdiction, this Court lacks personal jurisdiction over them, and this Court is an improper venue.

Plaintiff Morton Walker, a podiatrist, author and citizen of Connecticut, initiated this action in April of 1999 alleging copyright infringement, plagiarism, fraud and conspiracy. Mr. Walker's contentions are that Defendants authored, published and distributed a report entitled "Olive Leaf Extract: Nature's Secret for Vibrant Health and Long Life," which plagiarized and infringed his book, "Nature's Antibiotic: Olive Leaf Extract." Mr. Walker had originally endeavored to write the book pursuant to a contract with East Park Research, Inc. ("EPRI") whereby he agreed to refer to an EPRI nutritional supplement called "Eden Extract." The contract was terminated after EPRI reviewed the labeling rules of the United States Food and Drug Administration. Returning his advancement, Mr. Walker published the book anyway and EPRI followed with publication of the accused report.

Messrs. Nachman and Melcher are, respectively, Vice–President and President of EPRI, which is alleged to have produced and published the report. Defendants East Park Distributing and David Nicol are located in Canton, Ohio and are alleged to have distributed the report. Defendant Robert Concoby, also of Canton, is alleged to have authored the report. According to affidavits submitted with their motion, Messrs. Nachman and Melcher, who are domiciled in Nevada, traveled to Ohio to negotiate with David Nicol and Robert Concoby. Other than this negotiation, Messrs. Nachman and Melcher

claim to have had no other occasion to visit Ohio. They further claim that they have never individually conducted business in Ohio and do not maintain agents in Ohio. Plaintiff does not dispute these claims.

## II.

■ Defendants' main argument in favor of dismissal is that this Court lacks personal jurisdiction over them. The plaintiff bears the burden of establishing personal jurisdiction. *Weller v. Cromwell Oil Co.* 504 F.2d 927, 929 (6th Cir.1974). Where the defendant's motion to dismiss is supported by affidavits, the plaintiff normally must set forth specific facts showing the court has jurisdiction. *Weller v. Cromwell Oil Co.* 504 F.2d at 930. Here, however, the facts contained in the affidavits are undisputed; the question, then, is whether these facts, construed in a light favorable to plaintiff, make out a prima facie showing of jurisdiction. *Market/Media Research, Inc. v. Union–Tribune Publishing Co.* 951 F.2d 102, 104 (6th Cir.1991) cert. denied, 506 U.S. 824, 113 S.Ct. 79, 121 L.Ed.2d 43 (1992); *General Acquisition, Inc. v. GenCorp., Inc.* 766 F.Supp. 1460, 1485 (S.D.Ohio 1990).

■ To gain personal jurisdiction over a defendant in a diversity action, plaintiff must make two-pronged showing that (1) the defendant is amenable to suit under the forum state's long-arm statute; and (2) due process requirements of the Constitution are met. *CompuServe, Inc. v. Patterson* 89 F.3d 1257, 1262 (6th Cir.1996); *National Can Corp. v. K Beverage Co.* 674 F.2d 1134, 1136 (6th Cir.1982).[1]

Ohio's long-arm statute permits jurisdiction over any corporation or person "(1) transacting any business in this state; (2) contracting to supply services or goods in this state; ... (3) Causing tortious injury

---

**1.** The fact that Plaintiff may also have a basis for subject matter jurisdiction in the federal question raised by his copyright infringement claim does not change the personal jurisdiction analysis since 17 U.S.C. 501 *et seq.* does not provide for nationwide service of process.

*Onderik v. Morgan* 897 F.2d 204, 208 (6th Cir.1989); *Handley v. Indiana & Michigan Elec. Co.* 732 F.2d 1265 (6th Cir.1984); *United States v. Flack* 1997 WL 187373 (S.D.Ohio).

in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; . . . or (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state." O.R.C. § 2307.382(A).

As an initial matter, it is necessary to resolve the issue of whether Ohio's long-arm statute extends as far as notions of federal due process allow. If so, the two-pronged analysis of personal jurisdiction collapses into one and there is no need to examine Ohio's long-arm statute separately from the constraints of due process. *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998).

In *Goldstein v. Christiansen* 70 Ohio St.3d 232, 638 N.E.2d 541 (1994), the Ohio Supreme Court made it plain that Ohio's long-arm statute and federal due process are not co-extensive. The court found "erroneous" a lower court's statement that the General Assembly had intended to give Ohio courts jurisdiction to the limits of the Due Process Clause. *Id.* at 238 fn. 1, 638 N.E.2d 541, quoting McCormac, Ohio Civil Rules Practice (2 Ed.1992) 49, § 3.10 ("Ohio has not extended the long-arm jurisdiction to the limits of due process"), 4 Harper & Solimine, Anderson's Ohio Civil Practice (Supp.1993) 37, § 150.33, and 1 Casad at 4–8 to 4–9, § 4.01[1][b]. The Ohio

Supreme Court also pointed out that the analysis of personal jurisdiction properly occurs in two parts. *Id.*

■ On the strength of *Goldstein,* the court in *Highway Auto Sales, Inc. v. Auto–Konig of Scottsdale, Inc.* 943 F.Supp. 825 (N.D.Ohio 1996) recognized that Ohio's long-arm statute is not to be equated with the limits of federal due process. *Id.* at 828. Numerous other courts concur. *See e.g. Cole v. Mileti* 133 F.3d 433, 436 (6th Cir.1998); *LSI Industries, Inc. v. Hubbell Lighting, Inc.,* 64 F.Supp.2d 705, 706–07 (S.D.Ohio); *Douglas v. Modern Aero. Inc.* 954 F.Supp. 1206, 1210 (N.D.Ohio 1997); *Hoover Co. v. Robeson Industries Corp.,* 904 F.Supp. 671, 673 (N.D.Ohio 1995); *Glasstech, Inc. v. TGL Tempering Systems, Inc.* 50 F.Supp.2d 722, 725 (N.D.Ohio 1999).

This Court agrees with *Highway Auto Sales* —the analysis of the scope of Ohio's long-arm statute "requires more than mere passing reference." 943 F.Supp. at 828. However, despite the Ohio Supreme Court's seemingly unequivocal statement in *Goldstein,* some courts have continued to equate the analysis under Ohio's long-arm statute with that under the Due Process Clause.[2] In *CompuServe, Inc. v. Patterson,* for instance, the Sixth Circuit held that "it is settled law in Ohio . . . that the "transacting business" clause of [the long-arm statute] was meant to extend to the federal constitutional limits of due process. . . ." 89 F.3d at 1262. Support for this proposition is weak, however, since *CompuServe* cites only pre-*Goldstein* fed-

---

**2.** *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.* 23 F.Supp.2d 796, 806 (N.D.Ohio 1998); *Akro Corp. v. Luker* 45 F.3d 1541, 1544 (Fed.Cir.1995). *See also, Advanced Polymer Sciences, Inc. v. Phillips Indus. Services,* 34 F.Supp.2d 597 (N.D.Ohio 1999), in which the court holds that the "transacting business" clause is exempted from *Goldstein's* finding that Ohio's long-arm statute is not commensurate with federal due process. 34 F.Supp.2d at 599 fn. 7. This Court is reluctant to follow *Advanced Polymer Sciences* because the cases cited therein were

either decided before *Goldstein* or do not pertain to Ohio's long-arm statute. *Id.* Also, *Goldstein* itself does not support an exemption for the "transacting business" clause. 70 Ohio St.3d at 238 fn. 1, 638 N.E.2d 541. Finally, Ohio courts do not regard Ohio's long-arm statute as being commensurate with due process even when they are considering the "transacting business" clause. *See e.g. Corporate Partners, L.P. v. Nat'l Westminster Bank PLC* 126 Ohio App.3d 516, 524, 710 N.E.2d 1144 (1998).

eral opinions and does not cite *Goldstein* at all.

The conclusion seems inescapable, then, that Ohio's long-arm statute is not coextensive with federal due process. *See e.g. Heritage Funding and Leasing v. Phee* 120 Ohio App.3d 422, 425, 698 N.E.2d 67 (1997); *Corporate Partners, L.P. v. Nat'l Westminster Bank PLC* 126 Ohio App.3d 516, 524, 710 N.E.2d 1144 (1998). Therefore, when Ohio's long-arm statute is the basis for personal jurisdiction, the personal jurisdiction analysis requires separate discussions of whether the defendant is amenable to suit under Ohio's long-arm statute and whether due process requirements of the Constitution are met.

### III.

■ Under Ohio's long-arm statute, the exercise of jurisdiction over Messrs. Nachman and Melcher is appropriate. The "transacting business" clause in Ohio's long-arm statute is broader than the word 'contract' and encompasses 'carrying on' business and 'having dealings' within the state. *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.* 53 Ohio St.3d 73, 75, 559 N.E.2d 477 (1990). Defendant's negotiation of the distribution and authorship of the accused report constitutes a "transaction" of business for purposes of Ohio's long-arm statute. *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear Inc.,* 53 Ohio St.3d 73, 75, 559 N.E.2d 477 (1990) ("transact" means to "prosecute negotiations").

Further, the fact that Defendants were physically present in Ohio during these negotiations weighs strongly in favor of personal jurisdiction, especially since Ohio's long-arm statute does not necessarily require physical presence in the state. *Hammill Mfg. Co. v. Quality Rubber Products, Inc.* 82 Ohio App.3d at 374, 612 N.E.2d 472; *Ucker v. Taylor* 72 Ohio App.3d 777, 596 N.E.2d 507 (1991). Further, Defendants must have engaged in numerous telephone, facsimile and other communications to Ohio in order to facilitate the authorship and distribution of the accused report, and these communications

help constitute a basis for applying Ohio's long-arm statute. *Heritage Funding and Leasing Co. v. Phee* 120 Ohio App.3d at 427, 698 N.E.2d 67; *Hirschl v. Evans,* 1996 WL 146090 at *5–8 (1996).

In addition, the fact that the distribution and authorship agreements created ongoing duties and obligations between the non-resident and resident defendants weighs in favor of personal jurisdiction, *Kentucky Oaks Mall Co.* 53 Ohio St.3d at 76, 559 N.E.2d 477, as does the dissemination of allegedly infringing material in Ohio. *Goldstein v. Christiansen,* 70 Ohio St.3d at 236, 638 N.E.2d 541; *Corporate Partners, L.P. v. Nat'l Westminster Bank PLC* 126 Ohio App.3d at 524, 710 N.E.2d 1144; *U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.* 68 Ohio St.3d 181, 624 N.E.2d 1048 (1994). Hence, there is little doubt that under normal circumstances, Messrs. Nachman and Melcher would be subject to personal jurisdiction in Ohio courts.

### IV.

■ However, Messrs. Nachman and Melcher argue that the "fiduciary shield doctrine" prevents the assertion of personal jurisdiction over them because in all dealings relevant to the present litigation, they acted in their corporate rather than individual capacity. The fiduciary shield doctrine holds that "if an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct." *Marine Midland Bank, N.A. v. Miller* 664 F.2d 899, 902 (2d Cir.1981). Underpinning this doctrine is the "notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Id.*

If applied in its strongest form, the fiduciary shield doctrine would prevent the

exercise of personal jurisdiction under Ohio law because Defendants acted in their official capacity when they transacted business in Ohio. However, this Court finds that Ohio courts would not apply the fiduciary shield doctrine under the circumstances. In *Heritage Funding & Leasing Co. v. Phee,* the court subjected an officer of a company who had transacted business in Ohio to Ohio's long-arm statute even though he had acted in his official capacity in those transactions. 120 Ohio App.3d at 425, 698 N.E.2d 67. Hence, the mere fact that the officer had acted in his official capacity did not prevent the exercise of personal jurisdiction over him.

Only one other Ohio case pertains to the fiduciary shield doctrine—*Galloway v. Lorimar Motion Picture Mgmt., Inc.* 55 Ohio App.3d 78, 83, 562 N.E.2d 949 (1989). On a superficial read, *Galloway* seems to conflict with *Heritage Funding & Leasing Co.* The *Galloway* court found that officers of a corporation who had been individually named in the complaint were not subject to personal jurisdiction because "jurisdiction over individual officers of a . . . corporation cannot be based merely on jurisdiction over that . . . corporation." *Id.*

Although these cases seem to conflict, there is a key difference in that *Heritage Funding* involved an individual defendant who had made statements and taken actions while he was in Ohio, and who was personally involved in transactions that gave rise to the complaint. 120 Ohio App.3d at 427, 698 N.E.2d 67. In *Galloway,* however, the officers had merely sent an allegedly misleading prospectus to Ohio, and had not involved themselves personally in any transaction in Ohio that gave rise to the action. 55 Ohio App.3d at 79, 562 N.E.2d 949.

■ Hence, while Ohio courts recognize the fiduciary shield doctrine, they would not apply it in the instant case where Defendants, unlike the defendants in *Galloway,* personally involved themselves in a transaction giving rise to the cause of action, and were physically present in the state. *Heritage Funding & Leasing Co. v.*

*Phee* 120 Ohio App.3d 422, 698 N.E.2d 67. Ohio's long-arm statute, evaluated independently of the Due Process Clause, does not prevent the exercise of personal jurisdiction by this Court.

**V.**

■ Since Ohio law would permit this Court to exercise personal jurisdiction, the next step is to decide whether such an exercise accords with due process. To comport with due process, an exercise of personal jurisdiction requires that a defendant "have certain minimum contacts such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In determining whether a defendant has the requisite contacts, a distinction is made between "general" and "specific" jurisdiction. *Third Nat. Bank in Nashville v. WEDGE Group, Inc.* 882 F.2d 1087, 1089 (6th Cir. 1989) cert. denied 493 U.S. 1058, 110 S.Ct. 870, 107 L.Ed.2d 953 (1990).

■ Defendants do not have the kind of "continuous and systematic" contacts required to establish general jurisdiction. *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.* 138 F.3d at 627. Messrs. Nachman and Melcher visited Ohio on only one occasion in connection with at most two business transactions. Although these transactions resulted in an ongoing obligation to author and distribute allegedly infringing product, this is not the kind of "continuous and systematic" contact that would allow claims against Defendants that are not based on their contacts with the forum. *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.* 138 F.3d at 627.

■ Specific jurisdiction, on the other hand, exists if defendants have sufficient minimum contacts with the forum state and the action arises out of those contacts. *Id.* The Sixth Circuit has instituted a three-part test for the exercise of specific jurisdiction: "First, defendant must pur-

posely avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Southern Mach. Co. v. Mohasco Industries, Inc.* 401 F.2d 374, 381 (6th Cir.1968).

■ Ignoring for the moment the questions raised by the fiduciary shield doctrine, it is apparent that the defendants would be subject to personal jurisdiction under the *Mohasco* test set forth above. Messrs. Nachman and Melcher did not merely solicit a business deal over the phone or through distant methods of communication that were aimed at a general population. *Reynolds v. Int'l Amateur Athletic Fed'n* 23 F.3d at 1119. Their actions were targeted at a specific transaction and they personally visited the state of Ohio in order to negotiate a deal. *Serras v. First Tennessee Bank Nat'l Ass'n* 875 F.2d 1212 (6th Cir.1989). These negotiations gave rise to a "continuing obligation" for authorship and distribution that created a "realistic and foreseeable impact upon the commerce of the forum state." *Weldon F. Stump & Co., Inc. v. Delta Metalforming Co.* 793 F.Supp. 157, 159 (N.D.Ohio 1992); *Wright Intern. Exp., Inc. v. Roger Dean Chevrolet* 689 F.Supp. 788 (S.D.Ohio 1988).

Hence, the non-resident Defendants' relationship to an Ohio author and distributor was not a "one-shot affair" but an ongoing relationship that supports personal jurisdiction. *CompuServe, Inc. v. Patterson* 89 F.3d at 1257; *LAK, Inc. v. Deer Creek Enterprises* 885 F.2d 1293, 1301 (6th Cir.1989). Exercise of personal jurisdiction is also appropriate because Defendants were not merely purchasers of a service, but providers of a product to be distributed and marketed in and through

Ohio. *CompuServe, Inc. v. Patterson* 89 F.3d at 1264–65. And even if Defendants distributed only a *de minimis* number of accused reports, it is the "quality" of the contacts and not their "number" that counts. *Id.* at 1265. Finally, the causes of action arose, at least in part, from Defendants' activities in Ohio, in that their negotiations led to an agreement to author and distribute allegedly plagiarized and infringing material. *Cole v. Mileti* 133 F.3d 433. Under these circumstances, Defendants have enough contacts with Ohio to justify the exercise of personal jurisdiction over them for actions arising out of those contacts.

## VI.

In light of the above determination, disposition of Defendants' motion hinges on whether the fiduciary shield doctrine, as applied in the context of the due process analysis, will ward off the exercise of personal jurisdiction. Defendants argue that at all times relevant to Plaintiff's complaint, they were "acting solely in the course and scope of their duties as officers of EPRI." Citing *Weller v. Cromwell Oil Co.* for the proposition that personal jurisdiction over a corporate officer cannot be based solely on the propriety of the district court's exercise of jurisdiction over the corporation, Defendants argue that they are insulated from personal jurisdiction by the fact that they never acted in anything but their corporate capacity.

Although some district courts in Ohio have relied on *Weller* in finding that personal jurisdiction is precluded where a non-resident corporate officer commits a tort in his official capacity,[3] the better view is found in *State of Ohio ex rel. Celebrezze v. Browning–Ferris Industries, Inc.* 1987 WL 16940 (N.D.Ohio). There, a corporate officer had traveled to Ohio for business purposes at least seven times in connection with the activities that gave rise to the suit, and also initiated phone calls into

---

3. *United States v. Flack* 1997 WL 187373 *5 (S.D.Ohio); *Cincinnati Sub–Zero Products, Inc. v. Augustine Medical, Inc.* 800 F.Supp. 1549 (S.D.Ohio 1992).

Ohio regarding those activities. *Id.* at 1. The court found personal jurisdiction over the officer despite the fact that he had been acting in his corporate capacity. *Id.* at *2–3. Similarly, in *Akron Tire Supply Co. v. Gebr. Hofmann KG,* 390 F.Supp. 1395, 1399 (N.D.Ohio 1975), a case decided after *Weller,* the court found personal jurisdiction where a corporate officer visited Akron and was an "active participant" in negotiations. *Id.* at 1399.

As the *Browning–Ferris* court points out, the Sixth Circuit in *Weller* noted that the defendant corporate officers were never in the state of Ohio. *Id.* at *2; *Weller,* 504 F.2d at 931. Hence, in *Browning–Ferris* the defendant officer's physical entry into the forum distinguished his case from *Weller. Id.* at *4. This distinction has support in the post-*Weller* Sixth Circuit cases, none of which have invalidated a finding of personal jurisdiction over a corporate officer based merely on the fact that the officer had acted in his official capacity.

In *Chattanooga Corp. v. Klingler* 704 F.2d 903, 906–07 (6th Cir.1983), for instance, the Sixth Circuit condoned the exercise of personal jurisdiction over a former president and controlling shareholder of a company who had been physically present in the forum state in order to conduct negotiations. 704 F.2d at 906. It did so without considering whether he had acted in his personal or corporate capacity. *Id.*

In *Serras v. First Tennessee Bank, N.A.,* 875 F.2d 1212 (6th Cir. 1989), the court, although reversing the district court's grant of the defendant's motion to dismiss, stated that personal jurisdiction would not have been established if the only contact was that the defendant made an out-of-state telephone call to the plaintiff in the forum state to solicit plaintiff to engage in an out-of-state transaction. 875 F.2d at 1217. In *Serras,* the defendant traveled to the forum state to solicit the plaintiff's business and allegedly made fraudulent representations while in the state. *Id.* at 1217. *See also Lanier v.*

*American Board of Endodontics* 843 F.2d 901, 907–11 (6th Cir.1988); *Conti v. Pneumatic Products Corp.* 977 F.2d 978 (6th Cir.1992).

█ Hence, in the Sixth Circuit the mere fact that the actions connecting defendants to the forum state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants. This conclusion is bolstered by the fact that *International Shoe* and its progeny have never made a distinction as to the role in which a defendant performed his tortious act—whether for his personal benefit, for the benefit of an employer, or a third party. *See Columbia Briargate Co. v. First Nat'l Bank in Dallas* 713 F.2d 1052, 1058 (4th Cir.1983) (extensively discussing the fiduciary shield doctrine).

Hence, the exercise of personal jurisdiction over Messrs. Nachman and Melcher in this case comports with traditional notions of fairness and substantial justice, despite the fact that they acted in their corporate capacity when they visited Ohio to negotiate the authorship and distribution of the accused report. When a corporate agent comes into a state and commits a tort, it is not unfair to require him to defend a suit in that state. *Columbia Briargate Co. v. First Nat'l Bank in Dallas* 713 F.2d at 1059–61. The ramifications of his actions are foreseeable and the contacts with that state are not distant or tenuous, but actual, immediate, direct and personal. It may be true that "jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation," *Weller* 504 F.2d at 929; however, where an individual officer is physically present in the forum state and engages in a tortious transaction, jurisdiction is not "predicated merely upon jurisdiction over the corporation," but upon the agent's own purposeful availment of the forum state's laws and the reasonably foreseeable consequences of that availment. *Columbia Briargate Co. v. First Nat'l Bank in Dallas* 713 F.2d at

1060; *Idaho Potato Com'n v. Washington Potato Com'n* 410 F.Supp. 171, 182 (D.Idaho 1975).

A contrary result would be anomalous. In *Marine Midland Bank v. Miller,* the case which is usually taken to be the best exposition of the fiduciary shield doctrine, the Second Circuit admitted that the doctrine creates a "dichotomy" between "the principles governing the personal liability of corporate agents for torts committed in their corporate roles and the principles governing the amenability of such agent to personal jurisdiction solely on the basis of those acts." 664 F.2d at 902. This dichotomy defeats the purposes of the law creating substantive liability by permitting a corporate officer to shield himself from jurisdiction when he could not employ the same shield as a defense against substantive liability. *Columbia Briargate Co. v. First Nat'l Bank in Dallas* 713 F.2d at 1059 (citations omitted). Moreover, the doctrine creates the unreasonable result whereby a resident agent is liable and amenable to service for torts committed in his corporate role, but a non-resident agent, while liable, is effectively immune from suit because he is not subject to service of process. *Id.*

By traveling personally to Ohio to negotiate an agreement that gave rise to the cause of action in the present case, Messrs. Nachman and Melcher should have expected that they could be haled into court in Ohio for any tortious behavior engaged in there. The exercise of personal jurisdiction over them does not offend due process.

## VII.

Besides invoking the fiduciary shield doctrine, Defendants raise two other arguments to support their motion to dismiss. Neither argument suffices.

■ The first is that Plaintiff, in violation of Federal Rule of Civil Procedure 8(a)(1), failed to in his complaint to state the basis for the Court's jurisdiction over Messrs. Nachman and Melcher. Federal Rule of Civil Procedure 8(a)(1) requires a "short and plain statement of the grounds upon which the court's jurisdiction depends." Courts interpret this rule to refer to subject-matter jurisdiction and not personal jurisdiction, *Dirks v. Carnival Cruise Lines* 642 F.Supp. 971, 973 (D.Kan. 1986); *Gray v. Lewis & Clark Expeditions, Inc.* 12 F.Supp.2d 993, 995 (D.Neb. 1998), and commentators concur that the "complaint need not allege ... the basis for jurisdiction over defendant's person. ..." 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1206 at 96 (1990). Plaintiff's complaint will not be dismissed on the grounds he failed to plead personal jurisdiction over Messrs. Nachman and Melcher.

■ Defendants also argue that venue is improper as to them, and that the applicable venue provision is that of the Copyright Act, 28 U.S.C. § 1400(a), rather than 28 U.S.C. 1332, which governs diversity actions. Even if Defendants are correct that 28 U.S.C. § 1400(a) is the applicable venue provision, they are wrong that venue is improper as to them. Among other reasons, venue is proper because Messrs. Nachman and Melcher are subject to personal jurisdiction in this district. *Store Decor Div. Of Jas Intern., Inc. v. Stylex Worldwide Indus., Ltd.* 767 F.Supp. 181 (N.D.Ill.1991); *Droke House Publishers, Inc. v. Aladdin Distributing Corp.* 352 F.Supp. 1062 (D.Ga.1972).

## VIII.

For the reasons set forth above, Defendants' motion to dismiss is DENIED.

IT IS SO ORDERED.