[Cite as *Maui Toys v. Brown*, 2014-Ohio-583.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| MAUI TOYS, INC., | ) | |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | CASE NO. 12 MA 172 |
| V. | ) | |
| | ) | OPINION |
| MICHAEL H. BROWN, ET AL., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common
Pleas of Mahoning County, Ohio
Case No. 09CV978

JUDGMENT:                                        Reversed and Remanded

APPEARANCES:
For Plaintiff-Appellant                         Atty. Timothy J. Jacob
Atty. David A. Detec
Atty. Thomas J. Lipka
201 E. Commerce St., Atrium Level Two
Youngstown, Ohio 44503

For Defendants-Appellees                   Atty. Marshall D. Buck
100 Federal Plaza East, Suite 926
Youngstown, Ohio 44503

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: February 13, 2014

DONOFRIO, J.

{¶1} Plaintiff-appellant Maui Toys, Inc., appeals from a Mahoning County Common Pleas Court judgment denying its motion for leave to amend and dismissing its complaint against defendant-appellees, Michael Brown, Zippy Toyz, LLC, and Gary Brown, for lack of personal jurisdiction.

## Factual and Procedural Background

{¶2} Appellant is an Ohio corporation with its principal place of business in California. Appellant is the production-affiliate of Kessler Services, Inc. (Kessler), an executive management company incorporated in Nevada with its principal place of business in California. Brian Kessler (not a party to this action) is the president of both appellant and Kessler. Appellant is Kessler's only client; the two entities are indistinguishable with regard to financial obligations and corporate record-keeping.

{¶3} Appellant is a manufacturer and wholesaler of toys including "hula" hoops. Appellant operates a manufacturing, warehousing, and shipping facility in Youngstown, Ohio. Appellant's cornerstone product is assembled, warehoused, and shipped nationwide from the Youngstown facility.

{¶4} Appellee Michael Brown is a California resident and former employee of Kessler. Appellee Michael Brown's employment with Kessler began in June 1997, and continued until April 2008. It should be noted that it is not entirely clear from the record whether he was employed by Kessler Services or by appellant because for the duration of his employment, he held the title of Controller and Global Operations Manager for appellant. Nonetheless, throughout his employment, he resided in California; his office was also located in California. It is undisputed that he has never maintained an office in Ohio, nor has he ever transacted business here in his personal capacity. Additionally, he has never owned bank accounts, real property, or personal property in Ohio, and he has never paid Ohio state taxes. He has never initiated litigation in Ohio and has never voluntarily submitted to jurisdiction in Ohio.

{¶5} However, as Controller and Global Operations Manager, appellee Michael Brown was responsible for appellant's Youngstown facility and operations; the Ohio operations manager reported directly to him by telephone, e-mail, or fax, on an hourly basis, each day. Additionally, he was required to make trips to the

Youngstown facility 6-7 times per year for a total of 30-45 days per year to meet with vendors and negotiate prices with potential suppliers.

{¶6} It is not disputed that as appellant's Controller and Global Operations Manager, appellee Michael Brown possessed access to confidential business and trade secret information. On February 1, 2008, in consideration of terminating his employment with Kessler, he signed a Confidentiality and Proprietary Information Agreement (Confidentiality Agreement) in which he contracted that he would not disclose appellant's confidential information. Additionally, on April 24, 2008, he signed a Confidential Separation Agreement (Separation Agreement) containing a permissive forum selection clause providing that an action seeking to enforce the terms of the Confidentiality Agreement may be brought in California.

{¶7} While still working for appellant, appellee Michael Brown along with appellee Gary Brown formed appellee Zippy Toyz, LLC (appellee Zippy Toyz) on April 26, 2007. Appellee Michael Brown is the statutory agent for appellee Zippy Toyz. It is a California limited liability company involved in the manufacture and sale of toys to the general public. Its operations take place in California; it does not maintain any offices, representatives, or operations in Ohio; it does not report any income from the state of Ohio. On April 6, 2009, during the course of discovery in this action, appellee Michael Brown dissolved appellee Zippy Toyz, LLC and reincorporated the business under the name Zippy Toyz, Inc.

{¶8} Appellee Gary Brown is both the son of appellee Michael Brown and an employee of appellee Zippy Toyz. It is undisputed that appellee Gary Brown was and remains a California resident at all times relevant to appellant's complaint; that he does not own an Ohio bank account or any other real or personal property in Ohio; that he does not have an Ohio driver's license; that he has never voted in Ohio; that he does not maintain an Ohio mailing address or maintain a business office in Ohio; that he has never filed Ohio state income taxes; and that he has never voluntarily submitted to the jurisdiction of Ohio.

**{¶9}** On March 18, 2009, appellant filed this action alleging that appellees Michael Brown and Gary Brown formed appellee Zippy Toyz for the purpose of competing with appellant. Therein, appellant alleged that after terminating his employment with Kessler, appellee Michael Brown utilized appellant's confidential trade secrets and pricing lists in breach of his confidentiality agreement. Appellant also alleged that appellees Gary Brown and Zippy Toyz acted in concert with appellee Michael Brown to utilize said information. Specifically, the complaint alleges: (1) breach of the Confidentiality Agreement; (2) business interference; (3) unfair competition; (4) unauthorized use and dissemination of trade secrets; and (5) violation of the Ohio Uniform Trade Secrets Act.

**{¶10}** Before filing their answer and counterclaim, appellees immediately moved to dismiss for lack of personal jurisdiction over any of the appellees pursuant to Civ.R. 12(B)(2); appellees attached a supplemental memorandum in support of their motion to dismiss. Thereafter, appellant filed a memorandum in opposition and appellees replied.

**{¶11}** On August 17, 2009, after considering the arguments set forth in the parties' briefs as well as the relevant case law and statutory law, the trial court overruled defendants' motion to dismiss by judgment entry and set the matter for a status hearing before a magistrate. The trial court further ordered that appellees file the Separation Agreement under seal upon their own motion and good cause shown.

**{¶12}** On September 11, 2009, the magistrate set the jury trial for May 18, 2010; thereafter, the matter proceeded to mediation, discovery, and other pre-trial matters.

**{¶13}** On December 14, 2009, defendants filed their answer to appellant's complaint; appellees raised four defenses. Additionally, appellee Michael Brown counterclaimed for breach of contract. Therein, he alleged that appellant breached the express terms of the Separation Agreement by failing to submit to arbitration in California. He requested that he be awarded judgment against appellant in excess of $25,000 for all attorney fees and expenses incurred.

**{¶14}** In the meantime, appellant learned that, during the course of discovery, appellees dissolved appellee Zippy Toyz, LLC, and reincorporated under the name Zippy Toyz, Inc. Pursuant to Civ.R. 15(A), appellant moved for leave to amend its complaint to add appellee Zippy Toyz, Inc. as a party to this action. Thereafter, appellant also filed a motion to compel discovery to obtain information regarding the formation, operations, and corporate structure of Zippy Toyz, Inc.

**{¶15}** Refusing to produce any of the requested materials, appellees filed a memorandum in opposition to appellant's motion for leave to amend and again moved to dismiss for lack of personal jurisdiction. As their basis for revisiting the issue, appellees pointed to the fact that the case had since been referred to a magistrate as agreed to by the parties. The magistrate set a hearing for September 12, 2011. Appellant again responded with its own memorandum in opposition to appellees' motion to dismiss. The parties' briefs in support of, and in opposition to, appellees' second motion to dismiss were nearly identical to those presented to the trial court at the commencement of this action.

**{¶16}** Prior to the hearing set by the magistrate for September 12, 2011, and without any hearing on the matter in the interim, the trial court judge abruptly denied appellant's motion for leave to amend its complaint and found that it did not have jurisdiction over the named appellees and that the Courts of Ohio are an improper forum for this action. As grounds for dismissal, the trial court pointed to the fact that appellant's principal place of business is in California; that all appellees are located in California; that the parties' Separation Agreement provides that all claims for the use of confidential information should be litigated in California courts; and that the parties have agreed by contract that California courts are the proper jurisdiction for resolving the disputes asserted in the present litigation.

**{¶17}** This appeal followed.

**Assignment of Error # 1**

**{¶18}** On appeal, appellant lists two assignments of error. In the first, appellant argues that:

THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT'S MOTION TO DISMISS.

**{¶19}** Under this assignment of error, appellant presents two issues: (1) "the trial court erred in determining that it did not have personal jurisdiction over the defendants," and (2) "the trial court erred in holding that the parties had contractually agreed to litigate this matter in California."

**{¶20}** As to appellant's second issue, the Separation Agreement unambiguously provides for a permissive – rather than mandatory – forum selection clause. The parties did not contractually agree to litigate this matter in California but rather agreed that they *may* bring an action for disputes arising out of the Confidentiality Agreement in California should they so choose.

**{¶21}** Turning to the first issue, this Court must determine whether the trial court erred in determining that it did not have personal jurisdiction over the defendants.

**{¶22}** When determining whether an Ohio court has personal jurisdiction over a nonresident defendant, the court is obligated to engage in a two-step analysis. First, the court must determine whether Ohio's long-arm statute, R.C. 2307.382, and the complementary civil rule, Civ.R. 4.3(A)(1), confer personal jurisdiction. *Snyder Computer Sys., Inc.*, at ¶ 11. If so, the next step is to determine whether granting personal jurisdiction would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution. *Id.*, citing *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 235, 638 N.E.2d 541 (1994). Additionally, Ohio courts do recognize the fiduciary shield doctrine as a limit to a court's exercise of personal jurisdiction. *See e.g. S & R Recycling, Inc.*, at ¶ 27; *Heritage Funding & Leasing Co. v. Phee,* 120 Ohio App.3d 422, 430, 98 N.E.2d 67 (10th Dist.1997).

**{¶23}** The trial court's ruling granting the motion to dismiss or vacate for lack of personal jurisdiction is reviewed under a *de novo* standard. *State ex rel. DeWine v. S & R Recycling, Inc.*, 195 Ohio App.3d 744, 2011-Ohio-3371, 961 N.E.2d 1153, ¶ 8 (7th Dist.), quoting *Snyder Computer Sys., Inc. v. Stives*, 175 Ohio App.3d 653, 2008-Ohio-1192, 888 N.E.2d 1117, ¶ 1 (7th Dist.). In this case, upon the appellees' motion to dismiss, it became appellant's burden to establish that the trial court had jurisdiction over the defendants. *Lucas v. P&L Paris Corp.,* 7th Dist. No. 11-MA-104, 2012-Ohio-4357, ¶ 14. Because the court decided appellees' Civ.R. 12(B)(2) motions without an evidentiary hearing, appellant need only to make a prima facie showing of jurisdiction. *Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 784, ¶ 27. Further, in making its determination, this Court must "view allegations in the pleadings and the documentary evidence in a light most favorable" to appellant and resolve all reasonable competing inferences in favor of appellant. *Id.*, quoting *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 236, 638 N.E.2d 541 (1994).

### Fiduciary Shield Doctrine

**{¶24}** As a preliminary matter, we address whether the fiduciary shield doctrine prevents this Court from considering appellee Michael Brown's actions as Kessler's Controller and Global Operations Manager for appellant. Without explicitly asserting as much, appellees suggest that it does.

**{¶25}** The fiduciary shield doctrine prevents a court from considering an individual's acts done in an official capacity when analyzing whether the individual is subject to personal jurisdiction in the forum state. *S & R Recycling, Inc.*, at ¶ 27, citing *Heritage Funding & Leasing Co.,* at 430. In other words, "corporate employees performing acts in their corporate capacity are not subject to the personal jurisdiction of a court for such acts." *Heritage Funding & Leasing Co.,* at 430.

**{¶26}** Appellees emphasize the fact that appellee Michael Brown was employed by Kessler Services, a Nevada corporation, and not by appellant. Appellees point to the fact that appellee Michael Brown was and remains a resident

of California; that he only paid California state income taxes while employed at Kessler; and that he has never maintained a residence, office, or otherwise *personally* transacted any business in Ohio. On those bases, appellees assert that any of appellee Michael Brown's physical or electronic contacts with Ohio were made solely within the scope of his employment at Kessler, and were made only in furtherance of Kessler's relationship with appellant. Thus, appellees suggest, Ohio does not have jurisdiction over defendants because any contacts between appellee Michael Brown and Ohio were made in his corporate capacity as an agent of Kessler and thus cannot be considered here for purposes of determining jurisdiction over him in his individual capacity.

{¶27} Even assuming for the sake of argument that appellee Michael Brown was in fact employed by Kessler and not by appellant, appellees are incorrect.

{¶28} There are exceptions to the fiduciary shield doctrine. First, "Ohio law provides that a corporate officer can be held personally liable for a tort committed while acting within the scope of his employment." *Yo-Can, Inc. v. Yogurt Exch.*, 149 Ohio App.3d 513, 2002-Ohio-5194, 778 N.E.2d 80, ¶ 47 (7th Dist.), quoting *Atram v. Star Tool & Die Corp.*, 64 Ohio App.3d 388, 393, 581 N.E.2d 1110 (8th Dist.1989). Because a corporate agent may be held personally liable for tortious conduct committed in his or her corporate capacity, courts may likewise attribute those tortious acts to the individual for purposes of determining personal jurisdiction. *See MedChoice Fin.*, *LLC v. ADS Alliance Data Sys.*, S.D.Ohio No. 2:11-CV-212, 2012 WL 995309, *5 (Mar. 22, 2012), quoting *Natl. Precast Crypt Co. v. Dy-Core of Pennsylvania, Inc.,* 785 F.Supp 1186, 1191 (W.D.Pa.1992) (providing general background information on the fiduciary shield doctrine and its exceptions). Thus, where a defendant commits tortious acts in his or her corporate capacity, the tort exception applies for purposes of determining personal jurisdiction over a corporate agent who would otherwise be immunized from personal jurisdiction by the fiduciary shield doctrine.

**{¶29}** Secondly, under the "alter ego" exception, where an individual defendant is alleged to be the "alter ego" of a corporate defendant, a court will "pierce the corporate veil" so as to obtain personal jurisdiction over that individual based on acts taken in his corporate, representative capacity. *See e.g. S & R Recycling,* at ¶ 27. It should be noted that the "alter-ego" exception to the fiduciary shield doctrine is distinct from, but not inconsistent with, the aforementioned tort exception. *See generally S & R Recycling*, in conjunction with *MedChoice Fin., LLC v. ADS Alliance Data Sys.*, *supra.*

**{¶30}** Here, the issue is not whether appellee Michael Brown is the "alter ego" of Kessler Services or whether Ohio has jurisdiction over him *in addition to*, or *by virtue of*, having jurisdiction over his corporate employer. Rather, appellant seeks relief from him for torts that he allegedly committed in his official capacity. As appellant asserts, this action involves claims for business interference, unfair competition, unauthorized use of trade secrets, and violations of Ohio's Trade Secrets Act – all claims sounding in tort. Thus, the tort exception, and not the "alter ego" exception, to the fiduciary shield doctrine applies.

**{¶31}** Accordingly, the fiduciary shield doctrine does not prevent this Court from considering appellee Michael Brown's acts done in his official capacity when analyzing whether he is subject to personal jurisdiction in Ohio. We now turn to those actions to determine whether Ohio's long-arm statute and corresponding rule of civil procedure confer personal jurisdiction, and to determine whether the exercise of personal jurisdiction here would comport with due process of law.

### Ohio's Long-Arm Statute

**{¶32}** First, R.C. 2307.382 provides in pertinent part:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state;
>
> * * *

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state[.]

**{¶33}** Similarly, Civ.R. 4.3(A)(1) provides in pertinent part:

(A) When service permitted

Service of process may be made outside of this state, as provided in this rule, in any action in this state, upon a person who, at the time of service of process, is a nonresident of this state * * *. "Person" includes an individual, an individual's executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:

(1) Transacting any business in this state;

* * *

(9) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person to be served might reasonably have expected that some person would be injured by the act in this state[.]

**{¶34}** Together, R.C. 2307.382 and Civ.R. 4.3(A)(1) authorize a court to exercise personal jurisdiction over a nonresident defendant and provide for service of process to effectuate that jurisdiction when a cause of action arises from the nonresident defendant's transacting any business in this state. *Corporate Partners, L.P. v. Natl. Westminster Bank PLC*, 126 Ohio App.3d 516, 521, 710 N.E.2d 1144 (7th Dist.1998). The term "transact," means to "prosecute negotiations"; to "carry on business"; or to "have dealings." *See Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 75, 559 N.E.2d 477 (1990), certiorari denied, 499 U.S.

975 (1991). The phrase "transacting any business in this state" has been given broad interpretation by the Ohio Supreme Court. *Corporate Partners,* at 521, relying on *Goldstein*, at 236.

**{¶35}** For example, in *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, the Ohio Supreme Court concluded that negotiating a lease by telephone and mailing the lease to Ohio constituted "transacting business" under Ohio law; thus, the Court held, there was personal jurisdiction over the defendant even though the lease was for premises located in Kentucky and even though the defendant was a Georgia corporation that was not physically present in Ohio. *See generally Kentucky Oaks Mall Co., supra.*

**{¶36}** Similarly, in *Natl. Westminster Bank.*, *supra,* this Court held that a nonresident securities firm, National Westminster Bank PLC (NatWest), "transacted business" in Ohio for purposes of satisfying this state's long-arm statute where NatWest: (1) was retained by an Ohio-based corporation, Phar-Mor, as its exclusive placement agent; (2) met with Phar-Mor executives in Youngstown, Ohio; (3) visited stores and warehouses in Mahoning County; (4) attended meetings and events in the Youngstown area; and (5) prepared a private placement memorandum for Phar-Mor, which was ultimately distributed to potential investors. This Court noted that "NatWest's actions in preparing the PPM clearly qualif[ied] as transacting business in this state." *Natl. Westminster Bank*, at 524.

**{¶37}** Here, appellant first contends that Ohio's long-arm statute and applicable rule of civil procedure confer jurisdiction in the instant case. Appellant argues that appellee Michael Brown transacted business in Ohio for the purposes of R.C. 2307.382 and Civ.R.4.3(A)(1). In support, appellant points to appellee Michael Brown's position as Controller and Global Operations Manager for appellant, his physical presence at appellant's Youngstown facility 30-45 days per year, his daily/hourly electronic contact with appellant's Youngstown employees, and his alleged continued contact with the same even after he terminated his employment with Kessler.

{¶38} Further, appellant also points to "causing tortious injury" in Ohio as an additional statutory basis upon which personal jurisdiction over appellee Michael Brown may be found. Appellant emphasizes that all of its claims are based on purposeful acts and contends that it has both suffered and demonstrated tortious injury in Ohio. On this basis, appellant concludes that R.C. 2307.382 (A)(6) and Civ.R. 4.3(9) confer personal jurisdiction over defendants in the instant case.

{¶39} Lastly, appellant argues that through their agent, Michael Brown, appellees Zippy Toyz and Gary Brown have also transacted business in Ohio and have purposefully caused foreseeable, tortious injury in Ohio. Appellant asserts that because appellee Michael Brown is the statutory agent for appellees Zippy Toyz and Gary Brown, R.C. 2307.382 and Civ.R. 4.3 require that this Court impute his actions to them.

{¶40} In response, appellees contend that the trial court correctly determined that it did not have personal jurisdiction over them. Appellees argue that appellant's "mere allegations fail to establish Ohio court jurisdiction over Michael Brown," and that appellees have not transacted business in Ohio.

{¶41} In support, appellees argue that appellee Michael Brown was employed by Kessler and not by appellant; that he was and remains a resident of California; that he only paid California state income taxes during his employment with Kessler; and that he has never maintained a residence, office, or otherwise transacted any business in Ohio. Appellees further contend that while appellee Michael Brown visited Ohio 30-45 days a year, these trips were within the scope of his employment with Kessler and made only in furtherance of Kessler's relationship with appellant. On these bases, appellees argue that any and all of appellee Michael Brown's contacts with Ohio were merely the result of "the unilateral business activity incident to his employment with Kessler." Appellees conclude that accordingly, appellee Michael Brown failed to personally transact any business in Ohio and Ohio cannot assert personal jurisdiction over him.

**{¶42}** Additionally, appellees contend that neither appellee Zippy Toyz nor appellee Gary Brown is subject to Ohio-court jurisdiction. Appellees argue that neither appellee Zippy Toyz nor appellee Gary Brown have transacted business in Ohio or have caused tortious injury in Ohio. Appellees further suggest that appellee Michael Brown's actions cannot be imputed to appellee Zippy Toyz or to appellee Gary Brown. In support, appellees point to the fact that appellee Zippy Toyz is a California limited liability company with all business operations occurring within California, and that appellee Gary Brown is an employee of appellee Zippy Toyz; that neither appellee Zippy Toyz nor appellee Gary Brown have ever transacted any business in Ohio nor maintain any offices, residences, representatives, or operations in Ohio; that neither appellee Zippy Toyz nor appellee Gary Brown serve Ohio customers; and that neither appellee Zippy Toyz nor appellee Gary Brown report any income from the state of Ohio. On these undisputed bases, appellees conclude that the trial court properly concluded that it lacked personal jurisdiction over both appellee Zippy Toyz and appellee Gary Brown.

**{¶43}** While the factual premises of appellees' arguments are largely uncontested, the conclusions drawn therefrom are unsupported by the law; R.C. 2307.382 and Civ.R. 4.3 confer jurisdiction in the instant case.

**{¶44}** To invoke personal jurisdiction through Ohio's long-arm statute and Civ.R. 4.3, it need only be shown that appellee Michael Brown transacted "any business" in this state or that he caused tortious injury in this state, and that appellant's cause of action arose from such transaction and/or tortious conduct.

**{¶45}** For example, while not binding on this Court, the federal district court in *International Paper Co. v. Goldschmidt*, 872 F.Supp.2d 624 (S.D.Ohio 2012), also found that a nonresident, employee-defendant "transacted business" in Ohio. The facts in that case are very similar to those presented here.

**{¶46}** In *Goldschmidt*, an Ohio-based employer brought suit against its former divisional vice president who resided in California and resigned to work for a competitor, alleging breach of confidentiality agreement, violation of Ohio's Uniform

Trade Secret Act, breach of fiduciary duties, and breach of duty of loyalty. The defendant moved to dismiss for lack of personal jurisdiction and the court denied his motion. The court found that the California employee had acquired confidential and trade secret information through its employment with the Ohio company and that his unauthorized use and disclosure of this information would cause significant harm to the former Ohio-employer. More to the point, the court found that the former employee "transacted business" within Ohio where (1) the employee's position of four years fell within the company's Ohio-based division; (2) the employee had regularly communicated by e-mail, telephone, video, and website with his supervisor and other company personnel based in Ohio; and (3) the employee's position involved traveling from California to Ohio on at least two occasions within six months before his resignation to physically attend business meetings in Ohio.

**{¶47}** Here, while it is true that appellee Michael Brown is a California citizen who pays only California state-income taxes and does not reside or maintain an office in Ohio, it is equally well-established that he visited Ohio 30-45 days a year, for a period of over ten years. The fact that these visits were made in furtherance of Kessler's relationship with appellant is legally irrelevant because the fiduciary shield doctrine does not apply here as appellant's claims sound in tort. Thus, in light of *Kentucky Oaks Mall Co.*, *Natl. Westminster Bank*, and especially *Goldschmidt*, this degree of physical presence in the forum alone is sufficient to satisfy R.C. 2307.382 and Civ.R. 4.3.

**{¶48}** Nonetheless, even if it is not sufficient, appellee Michael Brown regularly communicated with appellant's Ohio employees when he was not physically present here. In his deposition, appellee Michael Brown confirmed that he communicated with appellant's Ohio employees not only daily, but *hourly*. Appellee Michael Brown also confirmed that his position as Controller and Operations Manager for appellant involved actively negotiating prices with potential suppliers. See Michael Brown Dep. at. p. 114.

**{¶49}** Where negotiating a lease agreement for out-of-state property over the telephone constitutes "transacting business" for the purposes of R.C. 2307.382 and Civ.R. 4.3, hourly electronic communication, every day for the duration of employment, is sufficient. *See generally Kentucky Oaks Mall Co., supra.*

**{¶50}** Further, appellant's cause of action clearly arises from appellee Michael Brown's transaction of business in Ohio, i.e., his oversight of appellant's manufacturing operations. To illustrate, *but for* his position as appellant's Controller and Global Operations Manager, appellant would have no grounds to suspect that he misappropriated appellant's trade secrets.

**{¶51}** Thus, appellee Michael Brown transacted business in Ohio and appellant's cause of action arose out of this transaction of business. Accordingly, Ohio's long-arm statute and corresponding rule of civil procedure confer personal jurisdiction over appellee Michael Brown.

**{¶52}** Even if appellee Michael Brown had not transacted business in Ohio and that, accordingly, neither did appellee Zippy Toyz and appellee Gary Brown, R.C. 2307.382 and Civ.R. 4.3 still confer jurisdiction over them because appellant's claims sound in tort. Specifically, R.C. 2307.382(A)(6) and Civ.R. 4.3(A)(9) permit a court to exercise personal jurisdiction over a nonresident defendant and provide for service of process to effectuate that jurisdiction if the cause of action arises from a tortious act committed, *directly or by an agent*, outside Ohio, with the purpose of injuring persons, when the nonresident defendant might reasonably have expected that some person would be injured thereby in Ohio.

**{¶53}** To illustrate, where an employer sued its former employee for misappropriation of trade secrets after the employee signed several confidentiality agreements and then retired and moved to another state, this state's Supreme Court held that R.C. 2307.382(A)(6) and Civ.R. 4.3(A)(9) conferred personal jurisdiction over the nonresident defendant because the employee-defendant, by entering into the non-disclosure agreements, could have reasonably expected that breaching the agreements by disclosing the confidential information to an out-of-state company in

the same business as plaintiff would injure the plaintiff in Ohio. *See Clark v. Connor*, 82 Ohio St.3d 309, 313, 695 N.E.2d 751 (1998).

**{¶54}** Here, as appellant asserts, all of its claims sound in tort and are based on purposeful acts. Further, although appellee Michael Brown may have technically been employed by Kessler Services and not by appellant, he could have reasonably expected that appellant would be injured in Ohio because the two corporate entities are fundamentally indistinguishable; as in *Clark v. Connor,* by entering into the confidentiality agreement as appellant's Controller and Global Operations Manager, he could have reasonably expected that breaching that agreement would injure Kessler's business affiliate (appellant) in Ohio. Thus, it is clear that even if he had not transacted business in Ohio, R.C. 2307.382(A)(6) and Civ.R.4.3(A)(9) still confer jurisdiction here.

**{¶55}** Moreover, appellant is also correct in its assertion that as an agent of appellee Zippy Toyz, appellee Michael Brown's actions may be imputed to appellee Zippy Toyz and appellee Gary Brown. Appellant correctly asserts that R.C. 2307.382 and Civ.R. 4.3 specifically permit the exercise of personal jurisdiction over a person, including a corporation or other business entity, who directly or *by an agent* commits a tortious act. Appellant claims that appellee Zippy Toyz and appellee Gary Brown, by and through their agent, appellee Michael Brown, have committed tortious acts against it by unfairly competing with it through the misappropriation and use of confidential information and trade secrets. While still working for appellant, appellee Michael Brown became the statutory agent of appellee Zippy Toyz; he transacted business in Ohio and it is by virtue of that business that he allegedly misappropriated appellant's trade secrets. Thus, R.C. 2307.382 and Civ.R. 4.3 permit the exercise of personal jurisdiction over appellee Zippy Toys and appellee Gary Brown, who have acted indirectly, through their agent, appellee Michael Brown.

**{¶56}** Accordingly, R.C. 2307.382 and Civ.R. 4.3. confer personal jurisdiction over all named defendants.

**Federal Due Process**

**{¶57}** Ohio's long-arm statute is not coterminous with due process. *Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 784, ¶ 45, citing *Goldstein v., Christiansen*, 70 Ohio St.3d 232, 238, 638 N.E.2d 541 (1994), fn. 1. Thus, although Ohio's long-arm statute confers jurisdiction over all three appellees, an Ohio court cannot exercise personal jurisdiction over any of them individually if doing so would violate their constitutional right to due process. *Id.*

**{¶58}** "[A] court may exercise personal jurisdiction over a nonresident defendant only if the defendant has sufficient 'minimum contacts' with Ohio such that summoning the defendant would not offend 'traditional notions of fair play and substantial justice.'" *Lucas v. P & L Paris Corp.*, 7th Dist. No. 11-MA-104, 2012-Ohio-4357, ¶ 30, citing *Internatl. Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945), in turn quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940). The constitutional touchstone here is whether the nonresident defendant purposely established minimum contacts in the forum state such that he or she should reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

**{¶59}** Personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state. *Kauffman Racing Equip.*, at ¶ 46. "General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Id.*, quoting *Bird v. Parsons*, 289 F.3d 865, 873, (6th Cir.2002).

**{¶60}** Appellant does not contend that appellees have continuous and systematic contacts with Ohio such that they would be amenable to Ohio jurisdiction even in an action unrelated to their contacts with Ohio. Rather, appellant contends that this Court has specific jurisdiction over the defendants. A court has specific

jurisdiction where a suit arises out of or is related to the defendant's contacts with the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), fn. 8. Appellant contends that its cause of action arises out of or is related to appellee Michael Brown's contacts with Ohio.

**{¶61}** Specific jurisdiction is consistent with due process only where: (1) the nonresident defendant purposely availed himself of the privilege of acting in the forum state or caused a consequence in that state, (2) the cause of action arose from the defendant's activities in the forum state, and (3) the acts of the defendant or consequences caused by the defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *See Kauffman Racing Equip.*, at ¶ 49, quoting *Bird*, F.3d at 974, quoting *Southern Machine Company v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir.1968). That said, a single act occurring within a state will support a finding of jurisdiction if it creates a "substantial connection" with the forum but not if it creates only an "attenuated affiliation" with the forum. *Burger King Corp.*, 471 U.S. at 475. Thus, jurisdiction is not proper where the contacts are random, fortuitous, or attenuated, or where they result from the unilateral activity of a third party. *Id.*, at 474.

**{¶62}** In *Burger King Corp.*, the United States Supreme Court considered the claim of a Michigan franchisee that he was not subject to suit in Florida for breach of a franchise agreement since he was not located in Florida and the alleged breach did not occur there. The Supreme Court held that Florida courts had personal jurisdiction over the Michigan franchisee since the franchisee had not made the contractually required payments in Florida and had continued to use plaintiff Burger King's trademarks and confidential business information, thus causing foreseeable injury to Burger King in Florida. The court further noted that the franchisee knew that he was affiliating himself with an enterprise based primarily in Florida. The court also noted that throughout the contract disputes, the Florida corporation and the Michigan franchisee had carried on a continuous course of direct communications by mail and by telephone.

**{¶63}** Here, appellant contends that the exercise of personal jurisdiction over defendants comports with due process. Appellant argues that due to appellee Michael Brown's repeated and on-going contacts with Ohio, and by virtue of his acquiring confidential information and trade secrets in Ohio, appellees had substantial connections to Ohio such that they should have reasonably expected to have been sued here. Moreover, appellant argues, these connections were not fortuitous but instead were directly related to appellee Michael Brown's management of appellant's Youngstown facility. Appellant concludes that, accordingly, appellees have purposefully availed themselves of the privilege of conducting activities within this state.

**{¶64}** Secondly, appellant contends that the second prong of the minimum contacts test is also met here because its claims arise from and are directly related to appellees' activities in Ohio. In support, appellant cites *CompuServ, Inc. v. Patterson* for the proposition that "[i]f a defendant's contacts with the forum state are related to the operative facts of the controversy, then the action will be deemed to have arisen from those contacts." 89 F.3d 1257, 1267 (6th Cir.1996).

**{¶65}** Lastly, appellant contends that the third and final prong of the minimum contacts test is also satisfied here. In support, appellant points to the well-established principle that the exercise of personal jurisdiction is presumptively fair and reasonable where the first two prongs of the minimum contacts test are met.

**{¶66}** In response, appellees argue that they do not have enough minimum contacts with Ohio to reasonably anticipate being haled into an Ohio court. In support appellees cite *International Shoe* and *Burger King* for the proposition that the criteria underlying the minimum contacts analysis cannot be "simply mechanical or quantitative," but rather, whether due process is satisfied depends upon "the quality and nature of the activity." *International Shoe*, 326 U.S. at 319. With this in mind, appellees argue that at best appellee Michael Brown's employment with a business affiliate of an Ohio-based corporation is a random, fortuitous, and attenuated contact with Ohio and thus does not establish the requisite minimum contacts necessary for

personal jurisdiction. Appellees further assert that appellee Michael Brown's only contacts with Ohio were established in furtherance of Kessler's relationship with appellant. Thus, appellees conclude, the quality and nature of such contacts preclude a substantial connection with Ohio of the kind with which due process is concerned. Appellees also assert that failure to dismiss appellant's suit for lack of personal jurisdiction would cause undue hardship to the appellees and that Ohio does not have any interest in settling this dispute.

{¶67} Additionally, appellees analogize this case to that of *Benjamin v. KPMG Barbados.* Appellees' analogy rests on the proposition that "purposeful availment ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts * * *." *Burger King,* 471 U.S. at 474-475.

{¶68} In *Benjamin,* the court found that it did not have personal jurisdiction over nonresident defendant-companies because their contacts with Ohio were too attenuated where the defendant companies had their offices in Bermuda and only occasionally performed services for its Ohio-based affiliates. 10th Dist. No. 03AP-1276, 2005-Ohio-1959.

{¶69} This analogy is unpersuasive and requires little treatment as appellant aptly distinguishes *Benjamin* from the case at bar by correctly pointing out that the level of contact there was significantly less than that present here. Appellant correctly asserts that the facts in the present case show a substantial connection to Ohio that was obviously lacking in *Benjamin*.

{¶70} Instead, while not binding on this Court, this case is more like that of *International Paper Co. v. Goldschmidt*, *supra.* The court in *Goldschmidt* held that an Ohio-based plaintiff-employer made a prima facie showing that an out-of-state defendant-employee purposefully availed himself of the privileges of conducting activities in Ohio where: (1) California employee accepted a promotion within the company's Ohio-based division; (2) the employee entered into a confidentiality agreement; (3) he regularly communicated with company personnel based in Ohio via e-mail, telephone, video, and website; (4) he frequently received confidential and

trade secret information *from* Ohio while stationed in California; and (5) his position in the company involved physically attending meetings in Ohio. 872 F.Supp.2d 624, 632 (S.D.Ohio 2012). Noting that the second prong of the minimum contacts test "does not require that the cause of action formally 'arise from' defendant's contacts with the forum," but rather only that 'the cause of action have a 'substantial connection' with the defendant's in-state activities, the court in *Goldschmidt* also held that the plaintiff-employer's cause of action 'arose from' the defendant-employee's activities in Ohio for the purposes of jurisdictional due process. *Goldschmidt*, at 632, citing *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir.2002). Finally, relying on the proposition that "where the first two criteria are satisfied, only the unusual case will not meet the third criterion," the court further noted that the exercise of jurisdiction was reasonable for the purposes of the minimum contacts test. *Goldschmidt*, at 633, relying on *Aristech Chem. Internatl. Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 628 (6th Cir.1998).

**{¶71}** Here, as Controller and Global Operations Manager for appellant with direct responsibility for appellant's Youngstown facility, appellee Michael Brown, in his official capacity as a corporate agent of Kessler Services, purposefully availed himself of the privilege of acting in Ohio. His position involved actively negotiating prices with appellant's suppliers, he was physically present in Ohio 30-45 days a year for a period of over 10 years, and when he was not physically present in the state, he was in constant contact with appellant's Ohio-based personnel.

**{¶72}** Additionally, the operative facts of appellant's claims are clearly related to appellee Michael Brown's contacts with Ohio as Controller and Global Operations Manager for appellant, an Ohio-based company.

**{¶73}** Lastly, the exercise of jurisdiction over appellee Michael Brown would be reasonable because "when the first two elements * * * are satisfied, then an inference arises that this third factor is also present." *Kauffman Racing Equip., L.L.C. V. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 784, ¶ 71, quoting *CompuServe Inc.*, 89 F.3d at 1268 (in turn, citing *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir.1988)).

{¶74} "'[O]nly the unusual case will not meet this third criterion.'" *Kauffman Racing Equip.,* at ¶ 71, quoting *Am. Greetings,* 839 F.2d at 1170. Appellant is correct in its assertion that appellees have not presented a compelling argument that this is one such unusual case. "'The United States Supreme Court has indicated that a high degree of unfairness is required to erect a constitutional barrier against jurisdiction. * * * This is especially true in a case * * * in which the defendant has intentionally directed his activity at forum residents * * *, and the "effects" of the activity occur in the forum state.'" *Kauffman Racing Equip.,* at ¶ 72, quoting *Calder v. Jones*, 465 U.S. 783, 788-789, 104 S.Ct. 1482, 79 L.Ed.2d 804.

{¶75} Nonetheless, a number of factors are relevant to the reasonableness inquiry. A court first must consider Ohio's interest in the controversy. *Kauffman Racing Equip.,* at ¶ 72, citing *In-Flight Servs. Corp. v. Van Dusen Air, Inc.* 466 F.2d 220, 232 (6th Cir.1972). Appellees contend that Ohio has no interest in settling this dispute. However, "'[i]t is beyond dispute that [a forum state] has a significant interest in redressing injuries that actually occur within the State.'" *Kauffman Racing Equip.,* at ¶ 72, quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S 770, 776, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). And, more to the point, "'Ohio has a legitimate interest in protecting the business interests of its citizens * * *.'" *Kauffman Racing Equip.,* at ¶ 72, quoting *Bird v. Parsons,* 289 F.3d at 875. Additionally, this state's Supreme Court's holding in *Kentucky Oaks Mall Co.* that modern transportation and communications have made it much less burdensome for a party to defend himself in another forum belies appellees' argument that litigating in Ohio would be unduly burdensome.

{¶76} Thus, exercising jurisdiction over appellee Michael Brown would be reasonable as the third prong of the minimum contacts test appears to be equally satisfied.

{¶77} Accordingly, exercising jurisdiction over appellee Michael Brown in the instant case comports with due process.

**Imputing Appellee Michael Brown's Minimum Contacts to Remaining Appellees: Reverse Corporate Veil Piercing**

{¶78} Exercising jurisdiction over appellee Zippy Toyz and appellee Gary Brown will also comport with due process *only if* appellee Michael Brown's contacts may be imputed to them. This turns on whether a court may "reverse pierce" appellee Zippy Toyz' corporate veil.

{¶79} It is a matter of fact that appellee Michael Brown's contacts with Ohio derive solely from his actions as a corporate representative of Kessler Services – not of appellee Zippy Toyz and appellee Gary Brown. Thus, in addition to never transacting business in Ohio and never holding any offices, residences, or operations in Ohio, it appears that appellee Zippy Toyz and appellee Gary Brown were never even *represented* in Ohio by their statutory agent, appellee Michael Brown – despite his presence here as Kessler's agent. This fact did not preclude R.C. 2307.382 and Civ.R. 4.3 from conferring jurisdiction in our long-arm analysis because those provisions specifically provide for imputing the acts of an agent –irrespective of the capacity in which the agent was acting. However, this fact complicates the constitutional analysis because, despite the fact that Ohio's long-arm statutes confer jurisdiction, it cannot even be said that appellee Zippy Toyz and appellee Gary Brown have *any* contact with Ohio, let alone constitutionally sufficient minimum contact, where neither were even so much as *represented* in this forum.

{¶80} As the basis for its assertion that appellee Michael Brown's actions and minimum contacts with Ohio are imputed to appellee Zippy Toyz and appellee Gary Brown, appellant asserts that appellee Zippy Toyz is "simply the business entit[y] through which defendant [appellee] Michael Brown has violated his agreements with [appellant] Maui and has engaged in unfair competition." On that basis, appellant further asserts that "[appellee] Michael Brown is in essence [appellee Zippy Toyz]. He is their agent, and his actions are imputed to them." At its core, appellant's assertion is that a corporate agent's minimum *contacts*, established only in his capacity as an agent for his former, *separate* corporate-employer, should be imputed to his current

employer to satisfy constitutional due process. Appellant does not cite to any legal authority to substantiate this assertion. Nonetheless, what appellant *suggests* is that this Court may do so by "reverse corporate veil piercing." *See e.g. Nu-Trend Homes v. Law Offices of DeLibera, Lyons & Bibbo*, 10th Dist. No. 01AP-1137, 2003-Ohio-1633, ¶ 38; and *State ex rel. DeWine v. Ashworth*, 4th Dist. No. 11CA16, 2012-Ohio-5632, ¶ 45.

**{¶81}** Although a corporation is a distinct legal entity, separate and apart from the natural individuals who formed it, "* * * courts will * * * pierce the corporate veil so as to impose individual liability on active shareholders for acts taken in their corporate capacity." *S&R Recycling, Inc.*, at ¶ 27. Conversely, "[r]everse piercing is a theory by which a party seeks to hold a corporate entity liable upon the personal obligation of a shareholder or principal." *Nu-Trend Homes*, at ¶ 38, citing *Ameritech Ohio v. Public Util. Comm.*, 86 Ohio St.3d 78, 82, 711 N.E.2d 993 (1999). Thus, as with traditional corporate veil piercing (by way of analogy), "[t]his theory is periodically used as a vehicle to obtain personal jurisdiction over an officer of a corporation which cannot otherwise be reached in a certain state. *State ex rel. DeWine v. S&R Recycling, Inc.*, 195 Ohio App.3d 744, 2011-Ohio-3371, 961 N.E.2d 1153, ¶ 27 (7th Dist.); *see e.g. Nu-Trend Homes v. Law Offices of DeLibera, Lyons & Bibbo*, 10th Dist. No. 01AP-1137, 2003-Ohio-1633, ¶ 38; and *State ex rel. DeWine v. Ashworth*, 4th Dist. No. 11CA16, 2012-Ohio-5632, ¶ 45.

**{¶82}** A court may pierce the corporate veil where (1) control over the corporation by those to be held liable is so complete that the corporation has no separate mind, will, or existence of its own, (2) such control is exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong. *State ex rel. DeWine v. S & R Recycling, Inc.*, at ¶ 28, citing *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 617 N.E.2d 1075 (1993), paragraph three of the syllabus. These same factors

must be proved to justify a reverse piercing of the corporate veil. *Nu-Trend Homes*, at ¶ 39.

**{¶83}** "The first prong of the *Belvedere* test 'is a concise statement of the alter ego doctrine; to succeed a plaintiff must show that the individual and the corporation are fundamentally indistinguishable.'" *S & R Recycling, Inc.*, at ¶ 30, quoting *Belvedere*, at 288. It is not enough that appellee Michael Brown may be appellee Zippy Toyz's only shareholder; "[a] corporation is a separate legal entity from its shareholder even where there is only one shareholder in the corporation." *S&R Recycling, Inc.*, at ¶ 30, quoting *Humitsch v. Collier*, 11th Dist. No. 99-L-099, 2001 WL 20733, *4 (Dec. 29, 2000). Rather, "Ohio courts have looked at various factors when determining whether a shareholder's control over a corporation is 'so complete that the corporation has no separate mind, will, or existence of its own.'" *S&R Recycling, Inc.*, at ¶ 31, quoting *Belvedere*, at paragraph three of the syllabus. These factors include 1) the failure to observe corporate formalities, 2) shareholders holding themselves out as personally liable for certain corporate obligations, 3) diversion of funds or other property of the company for personal use, 4) absence of corporate records, and 5) the fact that the corporation was a mere facade for the operations of the dominant shareholders. *Id.*, citing *LeRoux's Billyle Supper Club v. Ma*, 77 Ohio App.3d 417, 422-423, 602 N.E.2d 685 (6th Dist.1991).

**{¶84}** That said, because this case was adjudicated below on a motion to dismiss prior to a determination on appellant's motion to compel discovery, there are not enough facts in the record pertaining to appellee Zippy Toyz's formation, operations, and corporate structure to determine whether the first, let alone all three, of the *Belvedere* factors are satisfied.

**{¶85}** While we may speculate as to what information may have surfaced had appellant's motion to compel discovery been granted prior to dismissal, we do not know whether appellees have adhered to corporate formalities; we do not know whether appellee Michael Brown and appellee Gary Brown have held themselves out to be personally liable for corporate obligations; we do not know whether appellee

Michael Brown or appellee Gary Brown have diverted corporate funds for personal use; nor do we know the details of appellee Zippy Toyz's corporate records – assuming they exist. Additionally, although we may also speculate on the basis of appellee Zippy Toyz's mid-discovery dissolution and reincorporation, there is currently no evidence that appellee Zippy Toyz was or is a "mere facade" for the actions of either appellee Michael Brown or appellee Gary Brown.

**{¶86}** "Because the three-prong test of *Belvedere* requires that each prong be satisfied," and because the record is incomplete as to appellee Zippy Toyz's corporate structure, further analysis is not possible here and the case needs to be remanded to allow for further factual development on the issue of whether appellee Zippy Toyz's corporate veil may be pierced in reverse so as to impute appellee Michael Brown's contacts with Ohio to appellee Zippy Toyz and to appellee Gary Brown. *S&R Recycling Inc.,* at ¶ 35. While Ohio has jurisdiction over appellee Michael Brown, jurisdiction over appellee Zippy Toyz and appellee Gary Brown will depend upon this determination.

**{¶87}** For all of the foregoing reasons, we conclude that Ohio law and federal due process supports jurisdiction over appellee Michael Brown. Concerning appellee Zippy Toyz and appellee Gary Brown, we conclude that jurisdiction would be consistent with Ohio law, but that the record is incomplete so as to allow for a determination of whether jurisdiction over them would comport with federal due process. Accordingly, appellant's first assignment of error has merit.

### Assignment of Error # 2

**{¶88}** In its second assignment of error, Maui argues that:

THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND ITS COMPLAINT.

**{¶89}** During the course of discovery in this case, appellant learned that appellee Michael Brown and/or appellee Gary Brown formed Zippy Toyz, Inc. Believing that appellees may be using Zippy Toyz, Inc. instead of, or in addition to,

appellee Zippy Toyz LLC to allegedly engage in unfair competition with it, appellant filed a motion for leave to amend its complaint to add Zippy Toyz, Inc. as a party defendant.

**{¶90}** On May 5, 2011, appellant filed a motion for leave to amend its complaint pursuant to Civ.R. 15(A) to add Zippy Toyz, Inc. as a party defendant. The trial court denied the motion in the same entry in which it granted appellees renewed motion to dismiss finding that it did not have jurisdiction over appellees. Given the court's simultaneous treatment of the motions, the only rationale that can be gleaned from the record for the trial court's denial of appellant's motion for leave to amend was its contemporaneous finding that it did not have jurisdiction over appellees.

**{¶91}** The grant or denial of a motion to amend a pleading is within the trial court's discretion. *Turner v. Cent. Local School Dist.* (1999), 85 Ohio St.3d 95, 99, 706 N.E.2d 1261. An abuse of discretion is more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶92}** When confronted with a motion to amend a pleading beyond the time limit when such amendments are automatically allowed, Civ.R. 15(A), which governs the amendment of pleadings, provides that the trial court "shall freely give leave when justice so requires." The Ohio Supreme Court has stated that the language of Civ.R. 15(A) favors a liberal amendment policy. *Wilmington Steel Products, Inc. v. Cleveland Elec. Illuminating Co.,* 60 Ohio St.3d 120, 121-22, 573 N.E.2d 622 (1991). "[A] motion for leave to amend should be granted absent a finding of bad faith, undue delay or undue prejudice to the opposing party." *Hoover v. Sumlin,* 12 Ohio St.3d 1, 6, 465 N.E.2d 377 (1984).

**{¶93}** In this instance, the trial court's denial of appellant's motion for leave to amend was predicated upon its finding that it did not have jurisdiction over appellees, including appellee Zippy Toyz (and by extension Zippy Toyz, Inc.). Under appellant's first assignment of error, we found that the trial court erred in its finding that it did not have personal jurisdiction over appellee Michael Brown. We concluded that Ohio law

and federal due process supports the trial court's personal jurisdiction over appellee Michael Brown. Concerning appellee Zippy Toyz and appellee Gary Brown, we found that personal jurisdiction exists under Ohio law, but that the record was insufficient to allow for a determination of whether personal jurisdiction over them would comport with federal due process. This case is being remanded to the trial court for it to resolve that matter.

**{¶94}** Since the matter is being remanded to the trial court for it to resolve the jurisdictional issue as it pertains to appellee Zippy Toyz (and by extension Zippy Toyz, Inc.), our consideration of whether the trial court erred in denying appellant's motion for leave to amend its complaint to add Zippy Toyz, Inc. as a party defendant would be premature (notwithstanding the aforementioned Ohio Supreme Court case suggesting that the motion should be freely granted, assuming there is jurisdiction over Zippy Toyz, Inc.). Consequently, appellant's second assignment of error has been rendered moot. App.R. 12(A)(1)(c).

**{¶95}** The judgment of the trial court dismissing appellant's complaint is reversed. As jurisdiction over appellee Michael Brown is consistent with both Ohio law and federal due process, Ohio has personal jurisdiction over appellee Michael Brown. Jurisdiction over appellee Zippy Toyz and appellee Gary Brown is appropriate under Ohio law. However, the trial court's abrupt treatment of the matter has left an inadequate record to further assess whether jurisdiction over appellee Zippy Toyz and appellee Gary Brown would comport with federal due process. Therefore, this matter is remanded to the trial court with directions that it permit discovery on the narrow issue of personal jurisdiction concerning appellee Zippy Toyz and appellee Gary Brown, and then conduct a full jurisdictional evidentiary hearing to resolve whether jurisdiction over appellee Zippy Toyz and appellee Gary Brown in Ohio would comport with federal due process.

Vukovich, J., concurs.

DeGenaro, P.J., concurs in part and dissents in part with attached concurring in part and dissenting in part opinion.

**{¶96}** Based upon the record, appellant has made a prima facie showing of personal jurisdiction over appellees Michael Brown and Zippy Toyz consistent with Ohio's long arm jurisdiction and federal due process. The same cannot be said for Gary Brown. Further, the trial court erred by denying appellant's motion to amend the complaint.

**{¶97}** Because the trial court decided appellee's Civ.R. 12(B)(2) motion without an evidentiary hearing, this procedural posture affects the lens through which we conduct de novo review. This court stated:

> When the defense of lack of personal jurisdiction is asserted in a motion to dismiss, the plaintiff bears the burden to establish that the court has jurisdiction. *Sessoms v. Goliver*, 6th Dist. No. L–04–1159, 2004–Ohio–7077, at ¶ 22. When a trial court decides a Civ.R. 12(B)(2) motion without a hearing, the plaintiff need only make a prima facie showing of personal jurisdiction, while a decision made following an evidentiary hearing requires that the plaintiff offer proof by a preponderance of evidence. *American Office Services, Inc. v. Sircal Contracting, Inc.*, 8th Dist. No. 82977, 2003–Ohio–6042, at ¶ 7.

*Palermo v. Titan Leasing Co.*, 7th Dist. No. 04-MA-267, 2005-Ohio-5931, ¶ 10

**{¶98}** In ruling on a motion to dismiss for lack of in personam jurisdiction over the defendant, a trial court may, in an appropriate case, determine the jurisdictional issue from the pleadings and documentary evidence submitted by the parties in support and in opposition to the motion. *Barile v. University of Virginia*, 2 Ohio.App.3d 233, 234, 441 N.E.2d 608 (8th Dist.1981) citing *Jurko v. Jobs Europe Agency*, 43 Ohio App.2d 79, 334 N.E.2d 478 (8th Dist.1975).

**{¶99}** Based upon the pleadings and evidence, which must be construed in a light most favorable to appellant, I agree with the majority that consistent with Ohio's long arm jurisdiction appellant has made a prima facie showing of personal

jurisdiction over appellees Michael Brown and Zippy Toyz for the reasoning expressed within the majority opinion; however, no such showing has been made with respect to Gary Brown. Turning next to federal due process principles, while I agree with the majority that appellant has made a prima facie showing as to Michael Brown, I disagree with respect to Zippy Toyz and Gary Brown; a prima facie showing has been made with respect to the former but not the latter.

{¶100} For at least one year Michael Brown was acting in a dual capacity for the benefit of Zippy Toyz to the detriment of appellant. Contrary to the assertion of the majority at ¶79, Michael Brown's contact with Ohio from at least April 26, 2007 the formation date of Zippy Toyz through April 24, 2008 the termination date of Michael Brown's employment overlapped to provide evidence that Michael Brown and Zippy Toyz had sufficient minimum contacts with Ohio. This holding is consistent with due process principles articulated in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), and *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear*, Inc., 53 Ohio St.3d 73, 76, 559 N.E.2d 477, 480 (1990). Thus, in personam jurisdiction is proper with respect to Zippy Toyz.

{¶101} The same cannot be said regarding Gary Brown. The complaint alleges that Gary Brown is the son of Michael Brown and that he is an employee of Zippy Toyz. This is undisputed by appellees. The majority incorrectly states that Gary Brown formed Zippy Toyz with his father. The complaint states at Paragraph 11 that appellee Michael Brown solely formed Zippy Toyz which is furthered bolstered by the pleadings of appellees acknowledging that Gary Brown is an employee. The remainder of the allegations within the complaint against Gary Brown stem from his employment. Gary Brown does not have any contacts with the State of Ohio which would comport with either Ohio's long arm jurisdiction or federal due process principles. By the majority's logic any employee of the California based, Zippy Toyz would potentially be subject to this state's jurisdiction which is not consistent with due process principles articulated in the cases above.

{¶102} By remanding the case for further evidence, it appears that the majority has concluded that appellant has failed to establish jurisdiction over Zippy Toyz and Gary Brown by a preponderance of the evidence. As stated above, appellant need only make a prima facie showing to survive dismissal without a hearing. Palermo, supra. Thus, a remand for further hearing is unnecessary; by doing so the majority, in effect, is holding appellant to a higher burden of proof. Moreover, it is giving both parties a second bite at the apple; appellant will have another opportunity to establish jurisdiction over Gary Brown when it has already failed to make a prima facie showing; and appellees will have an additional opportunity to defeat jurisdiction over Zippy Toyz when a prima facie showing has already been made. Both results are problematic.

{¶103} It then follows that appellant's second assignment of error is not moot; the trial court erred by failing to grant appellant leave to amend its complaint to replace appellee Zippy Toyz LLC with Zippy Toyz, Inc. On March 19, 2009, appellant filed the instant action, but less than two weeks later Michael Brown dissolved the LLC and "reincorporated the business under the name Zippy Toyz, Inc." Majority opinion, ¶7. Pursuant to the rationale discussed by the majority at ¶92, leave to amend should be freely given, particularly where it appears leave to amend was sought to avoid prejudice to appellant's case by Michael Brown dissolving the LLC entity.

{¶104} In conclusion, appellant has made a prima facie showing that the trial court can exercise in personam jurisdiction over Michael Brown and Zippy Toyz, LLC, which comports with both Ohio's long arm jurisdiction and federal due process principles. Thus, the trial court's decision that it does not have jurisdiction over these defendants is in error and should be reversed. However, appellant has failed to make such a showing with respect to Gary Brown; accordingly the trial court's judgment in that regard should be affirmed. Finally, the trial court erred by failing to grant appellant leave to amend its complaint in order to replace Zippy Toyz Inc. for

Zippy Toyz LLC. Accordingly, that decision should be reversed and appellant granted leave to amend its complaint accordingly.